## Powell *versus* The Pennsylvania Railroad Company.

If a railroad company, employed in the transportation of live stock, permit straw or other combustible materials to be used on the cars, and a fire originate therefrom, by which the animals are injured, it is such negligence as will render them liable for the loss sustained.

A contract, exonerating the company from all claims which may arise for injury to the stock whilst in the cars of the company, does not exonerate them from the consequences of negligence in the performance of their duty as common carriers.

Goldey *v.* The Pennsylvania Railroad Company, 6 *Casey* 242, affirmed.

ERROR to the District Court of *Philadelphia*.

This was an action on the case by John B. Powell against The Pennsylvania Railroad Company, as common carriers, for negligence, whereby a mare of the plaintiff, delivered to them at Pittsburgh to be carried to Philadelphia, was burned in the cars of the defendants.

On the 13th November 1856, the defendants received from the plaintiff, at Pittsburgh, among other live stock, a young and valuable mare, to be carried to Philadelphia. At the loading of the stock, the plaintiff inquired of the agent of the company, J. W. Boyle, whose office it was to superintend the shipping of stock, if he could get some tan for bedding for his mare; and was informed that he could not, but that he could get plenty of straw, and was

[Powell v. The Pennsylvania Railroad Company.]

directed to a place where it could be obtained; and the straw being procured, was put into the car as bedding for the mare, in the presence of Boyle, the agent.

The agent of the company agreed with the plaintiff to put his stock as far back in the train as possible, as a position less liable to accidents; but the hands of the company, in switching off the cars, wholly disregarded this agreement, and placed the car containing the plaintiff's mare and other stock, the second one from the locomotive.

Previous to the shipping of the stock, the plaintiff was required to sign a release to the company in the following words: "I do hereby release the said railroad company from any and all claims which may or might arise for damage or injury to said stock, while in the cars of the said company, or for delay in its carriage, or for escape thereof from the cars, and generally from all claims relating thereto."

On the morning after leaving Pittsburgh, as the train was ascending the Allegheny Mountains, a fire broke out in the car containing the plaintiff's mare; supposed to have originated from sparks from the locomotive igniting the straw in the car. Notwithstanding the fire, the train proceeded at the slow rate it was moving up the mountains, from one and a half to two miles, to the next station, before it was stopped, or any effort made to extinguish the flames.

The plaintiff was in the rear of the train, and upon arriving at the scene of the conflagration, the mare was found lying in the bottom of the car, burned so as to be utterly valueless.

On the trial, the plaintiff's counsel requested the court below to charge the jury—"that if there was a liability to fire from sparks from the locomotive, it was negligence for the company to permit straw or other combustible materials to be used on the cars; and if the jury find that the fire originated from that cause, the company are liable."

The learned judge declined so to charge, on the ground that the plaintiff having put the straw in the cars himself, the fault was his own, and he could not recover. To this the plaintiff excepted; and a verdict having been, accordingly, rendered for the defendants, the plaintiff removed the cause to this court, and here assigned the same for error.

*Speakman*, for the plaintiff in error.—No special agreement, however binding in its terms, can exonerate a corporation assuming the duties of a common carrier, from liability for damages, resulting from its own negligence: Camden and Amboy Railroad Co. v. Baldauf, 4 *Harris* 67; Goldey v. Pennsylvania Railroad Co., 6 *Casey* 242; Beckman v. Shouse, 5 *Rawle* 179; Laing v.

[Powell *v.* The Pennsylvania Railroad Company.]

Colder, 8 *Barr* 479 ; Sager *v.* Railroad Co., 1 *Am. Railway Cases* 171; *Addison on Cont.* 516, &c. ; 2 *Story on Cont.* 225 ; Philadelphia and Reading Railroad Co. *v.* Derby, 14 *How.* 486 ; Sullivan *v.* Philadelphia and Reading. Railroad Co., 6 *Casey* 234; Reeves *v.* Delaware, Lackawanna and Western Railroad Co., *Id.* 454 ; Ritz *v.* Pennsylvania Railroad Co., 15 *Leg. Int.* 75.

*Cuyler*, for the defendants in error.—The defendants being held only for ordinary care and prudence, it would seem that the most liberal rule of law the plaintiff could ask for, would be that the company are liable, if they neglected to provide a well constructed spark arrester, or permitted their engines to be used and run without reasonable prudence and care. The ruling asked for by the plaintiff, would make the company absolute insurers against damage by fire ; and is, in fact, the application of the harsh rule of the common law against common carriers, with unrelaxed vigour.

The opinion of the court was delivered by

WOODWARD, J.—Whoever has been attentive to the course of decision in this court for the last few years, on questions between railroad companies and those whom they have injured in person or property, cannot have failed to observe, that on the one hand we accept no excuse from the party who obstructs the track or interferes with the transportation of the company, and on the other, that we hold companies bound to transport safely, or to respond in damages, except where the injury has resulted from the act of God, or the concurring negligence of the party complaining.

Skinner's Case, 7 *Harris* 298; Norton's Case, 12 *Id.* 466 ; and O'Brien's Case (N. P.), 15 *Legal Int.* 75, are instances of ruling upon the first branch of the alternative ; whilst there are many cases that belong to the second branch : 6 *Casey* 234, 242, 454, and 7 *Casey* 358, 372.

The ground of these adjudications is, that railroads, though in some sense public highways, like turnpike roads, are committed by law to the management and control of corporations, who are bound to employ all necessary officers and agents, and to instruct them in their respective duties so as to secure to the public a safe transportation. The public, while entitled without distinction to travel upon railroads, are entitled to do so only in a particular manner, in vehicles controlled and managed by the company; and of the control and management of which, it would seem, the company are not allowed to divest themselves, even for the purpose of giving them up to another company : *Angell's Law of Highways*, § 370 ; and Beman *v.* Rufford, 6 *Eng. Law & Eq. R.* 106.

And this control and management of the cars extends to every

part of the service; the receiving and discharge of passengers, and the loading and unloading of freight, as well as to the making up of trains, and conducting them over the road. In Reeve's Case, 6 *Casey* 464, it was said, the company are bound to employ all necessary agents, to instruct them properly in their duties, and to look to *them* for the performance of every act which the business of the road requires.

These principles are not more necessary for the safety of the public, than for the prosperity of railroad companies. If every man were permitted to occupy and use the tracks of railroads according to his own fancy or interests, or to dictate how cars should be loaded and arranged in the train, confusion and disaster, involving loss of life and injury to person and property, would ensue as inevitable consequences. The agents in charge at shipping points are presumed to know, better than freighters and drovers, how many dumb beasts ought to be put into a car, and what arrangements are necessary to be made for their comfort and safety; and it is due, alike to the animals and the owners, that the skill and experience of the agents should dictate everything that pertains to the taking on, the carrying, and the discharge of the load: Ritz *v.* Pennsylvania Railroad Company, 15 *Legal Int.* 75.

With these principles before us, let us look at the case upon the record. The plaintiff applied to the company's shipping agent at Pittsburgh, for the transportation of a young and valuable mare to Philadelphia. Two witnesses swear that the plaintiff asked for tan for bedding for the mare, and that the agent told him he could not get tan, but said he could get plenty of straw, and directed him where straw was kept for sale. The straw was obtained and put into the car, in the presence, and without objection from the agent. On the way, it took fire by sparks from the engine, and burned the mare, if not to death, so badly as greatly to impair her value.

The agent swears that the company have a positive rule that shippers are not to use straw except at their own risk. He does not recollect the conversation sworn to by the other witnesses; but that he "must have said, that if they used straw it would be at their own risk."

The plaintiff signed a release of the company from any and all claims for damage or injury to his stock, while in the company's cars.

Upon these facts, the plaintiff's counsel requested the court to charge, that if there was liability to fire from sparks from the locomotive, it was negligence for the company to permit straw or other combustible materials to be used in the cars; and if the jury find the fire originated from that cause, the company are liable.

[Powell *v*. The Pennsylvania Railroad Company.]

The refusal of the court to affirm this proposition is the only error assigned.

The ruling of the learned judge cannot be justified on the ground of the release signed by the plaintiff, because that has been held to be no excuse for negligence: See Goldey's Case, 6 *Casey* 242, and cases therein cited.

Was it negligence then to permit straw to be used? The result proves that it was. The plaintiff's point was dependent on the contingency that the fire originated from that cause—the use of the straw—and as the court refused to submit this question, we must presume it would have been found, as the plaintiff assumes the fact to be.

A fire resulting from the use of straw proves the impropriety of such use, and the rule of the company proves it also. The agent swears to the rule, but he brings home no notice of it to the plaintiff, except by his argumentative conclusion that he "must have said, if they used straw it would be at their own risk."

So far from this conclusion being accurate, the testimony of the other witnesses shows that the agent encouraged the plaintiff to obtain straw, and permitted him to use it without any proclamation of the rule that forbade it.

The existence of such a rule is evidence that the experience of the company had established the danger of using straw for bedding. And yet their agent stood by and suffered straw to be used without disclosing the danger, or pleading the rule, and thereby subjected the mare to the dreadful tortures described in the evidence, and the plaintiff to the loss of which he complains.

Such is this case upon the record. It was a case of flagrant negligence. For what is the company's agent there, but to prescribe the bedding for animals shipped on board of their cars, as well as to superintend all the preparations for the trip? The cars are theirs—under their exclusive control, and they are bound to see that they are road-worthy in all respects. A defective wheel, or axle, or framework, would confessedly render them liable even as against the release. The carrying of a combustible article so near the engine as to be exposed to sparks, was even more inexcusable; for this could not escape observation, as defects in the vehicle might. To attend to nine things and neglect the tenth, was to be guilty of the whole law. They were to take every precaution which prudence, diligence, and experience could reasonably suggest. It was for this, the law gave them their charter and their right to be public transporters. Their business will become a snare for the unwary, and an intolerable nuisance in the community, if they be not held to the conditions they have assumed— if they may perform part of their duties, and turn over the rest to be performed by ignorance and inexperience, disasters will become almost as frequent as trips.

[Powell *v.* The Pennsylvania Railroad Company.]

And when it is considered that the company itself generally suffers as much loss by each disaster, as those whom it injures, it is obvious, that the best interests of the company, as well as of the public, demand a strict observance of the rules and principles of law that are applicable to their business.

We are of opinion that, upon the facts presented, the plaintiff's point should have been affirmed.

The judgment is reversed, and a *venire de novo* awarded.