## Clyde *versus* Hubbard.

In the absence of stipulation by a carrier to transport freight beyond the terminus of its own route, it is not responsible for the default of those it employs to convey the remainder of the distance, but if it make itself responsible by contract, or if an agreement to be so can be fairly inferred from the bill of lading, it will be liable for a misdelivery of the goods by another carrier, to whom it has delivered them to be carried to their ultimate destination.

January 15th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1878, No. 130.

This was an appeal by William P. Clyde & Co., from a judgment of a magistrate in favor of Hubbard Brothers.

In the court below the following case was stated for the opinion of the court. The plaintiffs, Hubbard Bros., on October 30th 1875, delivered to the defendants, W. P. Clyde & Co., general managers of the Philadelphia and Charleston Steamship Company, a corporation which runs a line of steamers between the ports of Philadel-

[Clyde *v.* Hubbard.]

phia and Charleston, South Carolina, at their wharf in Philadelphia, one case of books of the value of $50.40, for transportation upon terms set forth in the following bill of lading, which embodies the whole contract between the parties:—

*These Bills of Lading for Through Freight only.*

PHILADELPHIA AND CHARLESTON STEAMSHIP LINE AND THROUGH FREIGHT LINE SOUTH AND SOUTHWEST.

Wm. P. Clyde & Co., General Managers,
No. 12 South Wharves, Philadelphia.
Wm. A. Courtenay, Agent, Charleston, S. C.

PHILADELPHIA, Oct. 30, 1875.

Shipped by Hubbard Bros.,
in apparent good order, on board the Steamship Fanita, with leave to transfer to any other Steamship, and bound for CHARLESTON, S. C., with liberty to call at any Port or Ports for whatever purpose.

The goods herein referred to shall be subject to a lien, and may be retained for freight and charges on other goods, due from the party on whose account they are transported, as well as for freight and charges on the goods retained.

*Marked*

HUBBARD BROS.,
Collinsville,
De Kalb Co.,
Ala.
*via* Charleston.
No. 2304.
Insurance, $
Charges, $

Rates guaranteed only from Philadelphia to
————————per 100 lbs.

| If 1st Class | If 2d Class | If 3d Class | If 4th Class | If 5th Class | If 6th Class |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

☞ No liability will be assumed for wrong carriage or wrong delivery of goods that are marked with initials, numbered or imperfectly marked. *Weights and classification subject to correction.*

One (1) Case Books,

Marked and numbered as per margin, and to be delivered in like apparent good order at Charleston, S. C. The acts of God, war or the enemy, restraint of Governments, fire while on board the vessel at sea, in port, or on shore, awaiting shipment or delivery, accidents from machinery, boilers, steam, or any other accidents of the seas, rivers, and steam navigation, of whatever nature or kind, excepted, and with liberty to sail with or without Pilots, and to tow and assist vessels in all situations, to be delivered at the vessels' tackles, unto the South Carolina Railroad, and by said road to be transported to destination, as per marks on the articles. Freight to be paid as per Printed Tariff Rates, together with advances as per margin.

Single shipments, actually weighing less than 100 pounds, will be charged as weighing 100 pounds. The owners of this ship will not be held responsible for Gold, Silver, Precious Stones, Metals, Jewelry, Treasure, or Valuables of any kind, unless Bills of Lading are signed therefor, and the value thereof therein specifically expressed.

And it is further expressly stipulated, that in case any claim shall arise from any damage or injury to the articles mentioned in this Bill of Lading, while in transitu and before delivery, the extent of such damage or injury shall be adjusted in the presence of an officer of the Railroad before the same are removed from the station.

And the amount of such claim when so ascertained shall be preferred at the office of the Chief of Transportation of the Road which shall have delivered the goods within ten days after such delivery. And in case such claim, whatever it may be, shall not be preferred within the time and at the place hereinbefore designated, such loss or damage shall be deemed to be waived.

[Clyde *v.* Hubbard.]

And it is further agreed, that the receipt or possession of this Bill of Lading by the Owner, Shipper, Consignee, or Agent of either or all of them shall be deemed sufficient proof of their knowledge of and agreement to the same.

Weights, contents, and condition of packages being unknown, no responsibility is assumed therefor : nor will the Company be responsible for cooperage or mending, loss in weight, leakage, breakage, or rust ; nor for frost, heat, natural decay of goods, or unavoidable exposure to weather ; nor for the value of above merchandise, if all or part of it be taken out of the possession of this Line by process or color of law, the shipper having received notice of the fact ; nor for goods not specified in this Bill of Lading.

It is expressly stipulated that the articles named in this Bill of Lading shall be at the risk of the owner, shipper, or consignee thereof while on the pier or wharf awaiting shipment.

And it is further stipulated, that in all cases of loss of such goods or merchandise, the amount of claim and damage shall be restricted to the cash value of such goods or merchandise at the port of departure, at the time of shipment and shall be presented as above, within ten days after the proper time for their delivery in due course ; and that all claims for partial loss or damage shall be ascertained and adjusted upon the same basis of value.

*In Witness whereof*, 2 Bills of Lading, all of this tenor and date, have been signed, one whereof being accomplished, the other to stand void.

F. ASHBURN,
*For Agents.*

(Form No. 15.)

[On the back of the foregoing Bill of Lading is printed the following :—]
Attention of shippers is called to the Clyde Steam Lines between—
Philadelphia and Providence and Boston.
"            Charleston, S. C.
"            Norfolk and Richmond, Va.
"            Alexandria, Georgetown, and Washington, D. C.
"            New York.
New York and Wilmington, N. C.
"            Charleston, S. C.
"            Galveston, Texas.
"            Havana de Cuba.

Through rates and through receipts given.
WM. P. CLYDE & Co.,                          WM. P. CLYDE & Co.,
No. 6 Bowling Green, New York.        No. 12 South Wharves, Phila., Pa.
General Managers.

The goods were delivered by the defendants in good order at Charleston, South Carolina, to the South Carolina Railroad Company. They were subsequently improperly delivered by the freight agent of the South Carolina Railroad Company to one H. P. Gibbs, who had no authority to receive them. No freight was prepaid, but the whole freight was to be collected from the consignee at the point of destination upon delivery.

The court entered judgment for the plaintiffs, and the damages

[Clyde v. Hubbard.]

were assessed at $53.08. The defendants assigned this entry of judgment for error. An objection that the judgment was improperly entered, inasmuch as it was entered against Clyde & Co., and not against the Steamship Company, was waived during the argument.

*John G. Johnson*, for plaintiff in error.—A carrier may bind itself to carry goods beyond the terminus of its route, and thus make itself responsible for the default of the connecting carrier, but the proof thereof must be clear: Pennsylvania Railroad Co. v. Berry, 18 P. F. Smith 272; Express Co. v. Bank, 19 Id. 394; Mullarkey v. Railroad Co., 9 Phila. 114; Nutting v. Railroad Co., 1 Gray 502.

The bill only binds us to deliver to the company at Charleston. It stipulates that there are to be two carriers.

*Richard C. Dale*, for defendants in error.—A carrier may bind himself to deliver goods beyond the termination of his own line; and his liability for their ultimate safe delivery is not absolved by proof that the goods were carried to the end of his line, and then delivered to the carrier next in the order of transit. This principle is distinctly recognised and was acted upon by this court in the case of the Baltimore and Philadelphia Steamboat Co. v. Brown, 4 P. F. Smith 77.

No shipper upon reading this bill would doubt that he had received an instrument contracting for the through carriage of his goods to their point of destination, and the plaintiffs in error are bound by the writing in having held themselves out to the world as through carriers.

Mr. Justice WOODWARD delivered the opinion of the court, March 3d 1879.

Whether the carriers of the books consigned to the plaintiffs below undertook to deliver them at the point to which they were finally destined, or became responsible only for their safe conveyance to the termination of the steamship company's line, must be determined by the facts set out in the case stated and by the terms of the bill of lading. One of the facts agreed upon was that Messrs. Clyde & Co. were the general managers of the Philadelphia & Charleston Steamship Company. In the bill of lading the name of such a corporation did not occur, and no contract on its behalf was specifically made. On the back of the bill there was this endorsement, "Attention of shippers is called to the Clyde Steam Lines." Nine different lines were then designated, of which that between Philadelphia and Charleston was one. Of all of them Messrs. Clyde & Co. described themselves to be the general managers, and in no instance was there any designation by a corporate

title.   From the heading of the instrument the contract for the carriage of the books appears *to* have been made in the names of the defendants below on behalf of the " Philadelphia and Charleston Steamship Line *and* Through Freight Line South and Southwest."   The case containing the books was marked " Hubbard Bros., Collinsville, DeKalb Co., Ala., *via* Charleston."   The description of the carriers and the form of address to the consignees would naturally imply a single contract for through transportation and delivery at the point of final destination.

Was there anything in the stipulation in the body of the bill of lading to subvert or overbear this natural implication, and to discharge the carriers from responsibility after delivery at the terminus of the ocean line ?   " One case of books, marked and numbered as per margin," were " shipped by Hubbard Bros., in apparent good order on board the steamship Fanita, with leave to transfer to any other steamship, and bound for Charleston, S. C.," * * * "and to be delivered in like apparent good order at Charleston, S. C." After providing for the protection of the carriers from liability for loss in certain specified contingencies, it was provided that the case should " be delivered at the vessels' tackles at the South Carolina Railroad, and by said road be transported to destination as per marks on the articles."   In substance and effect, what was this contract ?   The steamship company described itself not only as a " Steamship Line," but as a " Through Freight Line South and Southwest."   It undertook to carry goods to Charleston, but it undertook the further duty of providing for their delivery to the railroad company, and for their railroad transportation.   It would be difficult to find a reason why these stipulations did not bind the carriers to convey these books from Philadelphia to Collinsville.

That railroad transportation was in contemplation is apparently clear from other clauses of the bill of lading in these words : " In case any claim shall arise from any damage or injury to the articles mentioned, * * * while *in transitu* and before delivery, the extent of such damage or injury shall be adjusted in the presence of an officer of the railroad before the same are taken from the station. And the amount of the claim, when so ascertained, shall be preferred at the office of the chief of transportation of the road which shall have delivered the goods within ten days after delivery." These clauses do not apply to the demand of the plaintiffs, for their books were surrendered to H. P. Gibbs, who had no authority to receive them.   But they proved that the steamship company were carriers by land as well as carriers by water.   The provision that was made was for the adjustment of any claim for injury to goods, whenever and wherever occurring between the point of shipment and the point of delivery.

No question was raised upon the argument as to the legal rule determining the rights of the parties.   It was agreed that in the

[Clyde *v.* Hubbard.]

absence of stipulation by a carrier to transport freight beyond the terminus of his own route, he is not responsible for the default of those he employs to carry the remainder of the distance. And the principle of The Pennsylvania Railroad Co. *v.* Berry, 18 P. F. Smith 272, was accepted that the proof of the contract should be clear. Looking at all the provisions of this bill of lading, no doubt is felt that the claim of the plaintiffs ought justly to be allowed.

All objections to the judgment on the ground that the suit was brought against Clyde & Co. instead of the steamship company were waived by counsel.

Judgment affirmed.