# PENNSYLVANIA R. CO. v. CORNELIUS RAIORDON.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued March 21, 1888—Decided April 9, 1888.

1. It is settled that in Pennsylvania a common carrier may limit his liability by the terms of a special contract, but it is equally well settled, as an exception resting on grounds of public policy, that by such a limitation a common carrier may not be relieved from liability for his own negligence.

2. If property be lost in an injurious accident happening to or by reason

| 119 | 577 |
|---|---|
| 150 | 178 |
| 119 | 577 |
| 148 | 531 |
| 119 | 577 |
| 166 | 189 |
| 119 | 577 |
| 168 | 214 |
| 119 | 577 |
| 183 | 178 |
| 119 | 577 |
| 199 | 380 |
| 119 | 577 |
| 203 | ¹528 |
| 119 | 577 |
| e 22 SC | ⁴492 |
| 119 | 577 |
| 26 SC | ²468 |
| 26 SC | ²470 |
| 119 | 577 |
| f 211 | ¹273 |
| f 27 SC | ²350 |
| 27 SC | ³351 |
| f 27 SC | ²352 |
| 119 | 577 |
| 28 SC | ⁴219 |
| 119 | 577 |
| f 37 SC | ¹279 |

of that which a carrier has provided for the transportation, the law, imposing the exercise of the utmost care upon him, presumes the accident to be due to the want of that care and puts upon him the burden of successfully relieving himself from that presumption: Laing v. Colder, 8 Pa. 479.

3. But when, in an action to recover for property (live stock) lost in transitu, it does not appear in evidence that the loss resulted from such an injurious accident, the presumption of negligence on the part of the defendant does not arise, and the burden of proving it remains with the plaintiff.

4. The plaintiff sought to recover for the loss of a horse shipped under a bill of lading specially relieving the carrier from loss in transit except through gross negligence, which horse died on the way. There was no proof from the plaintiff, or in the case, of the cause of the death of the horse: *Held*, that no presumption of negligence arose from the fact of the loss, and the plaintiff was not entitled to recover.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 147 January Term 1887, Sup. Ct.; court below, No. 76 June Term 1885, C. P. No. 1.

On June 16, 1885, Cornelius Raiordon brought an action in case against the Pennsylvania Railroad Company to recover for the loss of a horse shipped upon the defendant's road.

The declaration averred that the defendant company was a common carrier, and charged that on March 31, 1885, the plaintiff delivered and the defendant received a horse, alive and in good condition, to be conveyed from Walkersville, Frederick county, Maryland, and delivered at Philadelphia, Pa., in the same good condition; yet, not regarding its duty, etc., etc., the defendant did not safely and securely deliver, etc., etc., but on the contrary, being such common carrier, so carelessly and negligently conducted itself in the premises that by and through the carelessness, negligence and default of the defendant the horse became and was injured and killed, whereby, etc. The defendant company pleaded not guilty and further that the plaintiff delivered said horse to the defendant upon an agreement in a certain bill of lading hereafter presented.

At the trial on October 31, 1887, before BIDDLE, J., the only witness called upon the plaintiff's case was the plaintiff himself, who testified that on March 31, 1885, he shipped

eighteen horses from Walkersville, Md., to Philadelphia upon the defendant company's road and that when he got to Philadelphia, one of the horses worth $125 was dead. On cross-examination, the plaintiff admitted his signature to a bill of lading produced and said that he came from Walkersville to Philadelphia in the same train with the horses; the horses were in a car next the engine; the next car had cows in it and then came the caboose in which plaintiff rode; the train started about ten, and reached Philadelphia about daylight; as it would stop on the way, the plaintiff looked into the car, but noticed nothing specially. The plaintiff's case was then rested.

The defendant put in evidence the bill of lading identified by the plaintiff; parts of which were as follows:

No.

FREDERICK STATION, P. R. R., March 31st, 1885.

C. Raiordon delivered into safe and suitable cars of the PENNSYLVANIA RAILROAD COMPANY, numbered 3516, for transportation from Frederick to Philadelphia, Live Stock of the kind and value, per head, as follows:

18 HORSES, value $130 per head.

\* \* \* \* \* \* \* \* \* \* \* \*

and which have been received by said company for themselves and on behalf of connecting carriers for transportation, upon the following terms and conditions, which are admitted and accepted by me as just and reasonable:—

First.—To pay freight thereon to said company at the rate of $30 per car and all back freight and charges paid by them, hereby agreeing to send a proper person or persons in charge of said stock, and hereby assuming all the risks of damage and injury to, delay, depreciation, and escape of said stock while in transit, and releasing the said company and other carriers from all claims or demands therefor, except when proved to have occurred through gross negligence.

\* \* \* \* \* \* \* \* \* \* \* \*

Third.—When necessary to transport said stock to point of destination over the line of any other carrier or carriers, delivery of the same to such other carrier or carriers may be made, and, in receiving the same for transportation, all the terms and conditions hereof shall inure to and be binding on such carrier as if originally made with them; and one carrier shall not be liable for the gross negligence of the other.

\* \* \* \* \* \* \* \* \* \* \* \*

Witness my hand and seal this 31st day of March, 1885.

CORNELIUS RAIORDON, [L. S.]
Shipper.

Attest.
A. S. McDANIEL,
Company's Agent.

The defendant then rested and requested the court to charge that under the terms of the bill of lading the verdict should be for the defendant. The court refused this instruction and without charge filed instructed the jury to find a verdict for the plaintiff for the value of the horse.

The jury found a verdict for the plaintiff for $144.37 and, judgment being entered, the defendant thereupon took this writ assigning for error the refusal of the court to instruct as requested.

*Mr. David W. Sellers*, for the plaintiff in error:

Under the bill of lading, it is clear that if any negligence was to be alleged, the burden of proof was on the plaintiff: Farnham v. Railroad Co., 55 Pa. 53; Amer. Exp. Co. v. Sands, 55 Pa. 140; Elkins v. Transportation Co., 81* Pa. 315; South. Penn. R. Co. v. Fries, 87 Pa. 234. If the plaintiff had not been in charge, it would have been the duty of the carrier to explain: Penn. R. Co. v. Miller, 87 Pa. 395; but he knew the facts as well if not better than any one composing the crew. The jury cannot find negligence from facts and circumstances which do not tend to show want of reasonable and ordinary care, no more than they can find any other facts without competent and sufficient evidence: Adams Exp. Co. v. Sharpless, 77 Pa. 517; Fouhy v. Penn. R. Co., 17 W. N. 177. Grogan v. Adams Express Co., 114 Pa. 523, is not inconsistent with the prior law of this state.

As there was no evidence of gross negligence, nor, indeed, of any negligence, on behalf of the defendant carrier, the presumption of negligence not arising, the instruction of the court was equivalent to a ruling that in this state a carrier cannot limit the common law liability at all.

*Mr. Alex. Simpson, Jr.*, for the defendant in error:

1. In Grogan v. Adams Exp. Co., 114 Pa. 523, the defendant, as in this case, offered no proof, relying on the bill of lading. But this court held, reversing the court below, that the loss having occurred while the property was in the defendant's hands a presumption of negligence arose in the absence of any evidence that the loss occurred without the fault of the defendant. This is the uniform rule in this state, appearing even in the cases cited by the defendant.

2. The plaintiff was not in charge of the train. And even if he had caused the injury, in doing that which the company should have done, the company would still be liable: Powell v. Penn. R. Co., 32 Pa. 414; Lack. & B. R. Co. v. Chenewith, 52 Pa. 382; Ritz v. Penn. R. Co., 3 Phila. 82. The fact that plaintiff looked into the car while on the way and noticed nothing specially, does not prove there was no negligence. It only proves that at that time the loss had not occurred.

3. Moreover, the bill of lading did not cover this case. Under its terms, the common law liability remains unless this is one of the "risks of damage and injury to, delay, depreciation and escape of said stock while in transit." Can this be fairly held to include a case of death? These exemption clauses are to be construed most strictly against the carrier, and they must be "clear and explicit, and not liable to the charge of ambiguity or doubt": Beckman v. Shouse, 5 R. 188; Atwood v. Transportation Co., 9 W. 87; Camden & A. R. Co. v. Baldauf, 16 Pa. 68.

OPINION, MR. JUSTICE WILLIAMS:

It is too late to deny that in Pennsylvania a common carrier may limit his liability by special contract. In Atwood v. Reliance Transportation Company, 9 W. 87, GIBSON, C. J., recognized the rule as well established, although expressing grave doubts of its wisdom. In Laing v. Colder, 8 Pa. 479, this court again gave its assent to the rule, while BELL, J., by whom the opinion was delivered, expressed his sympathy with the doubt of Chief Justice GIBSON. The same rule has been held in many later cases, among which are Powell v. Penn. R. Co., 32 Pa. 414; Amer. Express Co. v. Sands, 55 Pa. 140; Penn. R. Co. v. Miller, 87 Pa. 395; Adams Express Co. v. Sharpless, 77 Pa. 517; Clyde v. Hubbard, 88 Pa. 358.

It is equally well settled that such limitation does not relieve the carrier from liability for his own negligence: Penn. R. Co. v. Miller, supra. The reason for this qualification of the power to limit liability rests on public policy. At common law if property was lost or injured while in the hands of the carrier, the burden of proof was on the carrier to show the existence of such circumstances as were sufficient to excuse him from liability. Such is still the general rule, but when a

special contract is entered into between the shipper and the carrier, the contract takes the place of the common law rule and fixes the liability of the carrier.

In the case at bar Raiordon shipped a car-load of horses, eighteen in all, over the railroad of the defendant from Walkersville, Maryland, to Philadelphia. The bill of lading provided that the shipper should "send a proper person or persons in charge of said stock and assume all risks of damage and injury to, delay, depreciation, and escape of said stock while in transit, releasing said company and other carriers from all claims or demands therefor, except when proved to have occurred through gross negligence." The plaintiff, in accordance with his undertaking to send a proper person in charge of the stock, went himself upon the train with it, and, as he testified on the trial, went to the car in which his horses were every time the train stopped, and looked into it, but saw nothing to attract his attention. When the train arrived in Philadelphia, one of the horses was found dead in the car, and this action was brought to recover its value from the railroad company. The plaintiff showed that he shipped the horses, eighteen in number, for Philadelphia, and that on the arrival of the train one of them was dead; but he did not show whether the horse died from disease, or fright, or injuries received in the course of the transportation, nor was it alleged that any accident happened to the train, or the car in which the plaintiff's horses were, while on the journey. The defendant, in view of this state of the evidence, offered the bill of lading and rested. The court was then asked to charge the jury "that under the terms of the bill of lading their verdict should be for the defendant." This instruction was refused, and then a binding instruction to find in favor of the plaintiff for the value of the horse was given. The learned judge did not place his reasons for this instruction upon the record.

As the right of the carrier to limit his liability is well settled in Pennsylvania, we are left to conjecture that the instruction was induced by an opinion that there was a legal presumption of negligence against the defendant that shifted the burden of proof, and put upon the carrier the duty of showing that the death of the horse was not due to the negligence of its agents or servants.

The rule in relation to the presumption of negligence against a carrier is well stated in Laing v. Colder, 8 Pa. 479: " Now the mere happening of an injurious accident raises, prima facie, a presumption of neglect, and throws upon the carrier the onus of showing that it did not exist." But the word " accident" must be understood as referring to such happenings as the exercise of proper care by the carrier could have prevented. The machinery for transportation is under his exclusive management and control, and he contracts for its sufficiency, and for the skill and fidelity of his servants in charge of it.

If, for any reason, an " injurious accident " happens to, or by reason of, that which the carrier provides for the transportation, the law, which imposes the exercise of the utmost care upon him, presumes the accident to be due to the want of that care and puts upon him the duty of successfully relieving himself from that presumption. But when the fact of an " injurious accident " is not shown to exist, the presumption which arises from it cannot be invoked by a plaintiff. The contract of the carrier does not insure against death generally, but only as it may be the result of an injurious accident in the course of the carriage. A passenger may die while in his seat in a car from disease or from his own act, just as he might die in his own house from the same cause ; but we have never heard it alleged that the carrier was liable in damages because of a death so happening, nor that it was his duty to show affirmatively that the death was due to causes over which he had no control. Death from natural causes can hardly be called an accident, but if it was otherwise, yet there is a very broad distinction between the case of its coming to a passenger as an individual by reason of circumstances and conditions that are personal and peculiar to him, and the case of its coming to a passenger as such by reason of accident to, or on account of, the means of transportation employed by the carrier, whether in motion or not. In the former class of cases no presumption of negligence can arise, for the facts furnish no foundation for it. In the latter there is a presumption, not conclusive, but prima facie, on which the plaintiff may rest, and which the carrier must overcome.

Applying this distinction to the case we have in hand and

its disposition is easy. . The testimony of the plaintiff· showed the happening of no injurious accident to the train or car on which his horses were transported. It showed that he was personally in charge of them and at every stop examining the car, and that he saw nothing to attract his attention. It showed that the death of his horse on the journey was wholly unknown to him until he reached this city, and he does not attempt to assign a cause for it. This testimony left no ground for the legal presumption that arises from the happening of an injurious accident, and left the burden of proof, where it rests in ordinary cases, on the plaintiff. When, therefore, it appeared by the terms of the bill of lading that the liability of the carrier was limited to such injuries as were the result of gross negligence on its part, and the plaintiff made no attempt to show the happening of an accident or the negligence of the carrier, the court should have given the binding instruction asked by defendant's counsel. In fact it may well be doubted whether the introduction of the bill of lading was at all necessary. The plaintiff's evidence left him no fact from which the legal presumption could arise, and no proof to take its place from which negligence in fact could properly be found by the jury. This was· therefore a case in which a compulsory nonsuit would have been proper.

Judgment reversed.