## Trace v. Pennsylvania Railroad, Appellant.

*Railroads—Common carriers—Negligence—Degree of care—Presumption—Live Stock.*

A common carrier is bound to employ safe and sufficient means of carriage, trustworthy and competent servants and, by himself or his agent, to exercise an intelligent supervision over the system of carriage which he employs. He is therefore to all intents and purposes an insurer against such perils of transportation as it is his duty to provide against; and these include all the perils of the journey except such as arise from the act of God or the public enemies.

If for any reason an injurious accident happen to or by reason of that which the carrier provides for the transportation, the law which imposes the exercise of the utmost care upon him, presumes the accident to be due

to the want of that care and puts upon him the duty of successfully relieving himself from that presumption.

If a railroad company employed in the transportation of live stock permits straw or other combustible material to be used on the cars and a fire originates therefrom by which the animals are injured, a presumption of negligence arises against the company, which it must rebut in order to relieve itself of liability for the loss. In such a case the company cannot by contract limit the liability to a sum less than the value of the animals as against its own negligence.

Argued May 18, 1904.   Appeal, No. 58, April T., 1904, by defendant, from judgment of C. P. Venango Co., April T., 1903, No. 25, on verdict for plaintiff, in case of C. E. Trace v. Pennsylvania Railroad Company.   Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for the loss of two horses.   Before CRESWELL, P. J.

At the trial it appeared that the horses were lost in a fire during their transportation from Franklin to Johnstown.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,245.   Defendant appealed.

*Errors assigned* were (1–6) the instructions quoted in the opinion of the Superior Court.

*C. I. Heydrick,* with him *John L. Nesbit,* for appellant.— Trace's release or limitation of liability is not general but particular.   This kind of contract has been held to be lawful in Penna. R. R. Co. v. Raiordon, 119 Pa. 577, and cases there cited.

This accident was extraordinary.   The omission to guard against extraordinary accident is not negligence.   The carrier is not expected to guard against that which no reasonable man would expect to occur: Blyth v. Birmingham Water Works, 11 Ex. 781 ; Greenland v. Chaplin, 5 Exch. 243.

The effect of Trace's special. contract for the carriage of these horses was to make the railroad company not a common carrier and general insurer of the horses, but a carrier with

special limited liabilities, and only an insurer against the consequences of its own negligence, and in such a case we say the burden of proof of the carrier's negligence ought to be upon the shipper : Farnham v. Camden & Amboy R. R. Co., 55 Pa. 53 ; Penna. R. R. Co. v. Raiordon, 119 Pa. 577.

*Robert F. Glenn*, for appellee.

OPINION BY BEAVER, J., November 21, 1904 :

It was said in Willock v. Penna. R. R. Co., 166 Pa. 184: " A common carrier is bound to employ safe and sufficient means of carriage, trustworthy and competent servants and, by himself or his agent, to exercise an intelligent supervision over the system of carriage which he employs. He is, therefore, to all intents and purposes, an insurer against such perils of transportation as it is his duty to provide against; and these include all the perils of the journey, except such as arise from ' the act of God or the king's enemies.'

" Our forefathers brought this definition of the duties of a common carrier with them, when they came to this continent, and its outlines remain substantially the same to this day. Some limitations upon his common-law liabilities have been sustained to protect the carrier against unjust and fraudulent claims on the part of customers ; but the measure of care due from him to those whom he serves has not been abated in the slightest degree. He is still held to be an insurer against such perils as it is his duty to provide against, and among these are such as arise from the use of defective or inadequate instruments of carriage and from the employment of incompetent, negligent or criminal servants : Farnham et al. v. The Camden & Amboy R. R. Co., 55 Pa. 53."

It was also said, in Penna. R. R. Co. v. Raiordon, 119 Pa. 577 : " The rule in relation to the presumption of negligence against a carrier is well stated in Laing v. Colder, 8 Pa. 479, ' how the mere happening of an injurious accident raises prima facie a presumption of neglect and throws upon the carrier the onus of showing that it did not exist.' But the word ' accident ' must be understood as referring to such happenings as the exercise of proper care by the carrier could have prevented. The machinery for transportation is under his exclu-

sive management and control and he contracts for its sufficiency and for the skill and fidelity of his servants in charge of it.

"If, for any reason, an 'injurious accident' happens to or by reason of that which the carrier provides for the transportation, the law which imposes the exercise of the utmost care upon him presumes the accident to be due to the want of that care and puts upon him the duty of successfully relieving himself from that presumption."

It appears, from the testimony in the case under consideration, that the plaintiff, a dealer in horses, desiring to ship a pair of high priced horses from Franklin, where he resided, to Johnstown, Pa., telephoned the freight agent of the Pennsylvania railroad for a car for that purpose. Having been informed that the car was at the station, the horses were loaded upon it. The car being an ordinary closed box car, straw for bedding the horses was used and, in order to allow air to enter the car, the sliding doors at the sides were left open for about six inches. En route between Franklin and Johnstown, after passing Kiskiminetas Junction, the car was discovered to be on fire, the employee of the plaintiff, who accompanied the horses, being then in the caboose with two of the brakemen connected with the train. The brakemen immediately signaled to the engineer to stop the train and as soon as their signal was observed and the train stopped every effort was made to extinguish the fire but without avail. The horses and the car were completely destroyed and the action here is for the recovery of the value of the horses, based upon the negligence of the defendant.

It is important to keep in mind that the ground upon which recovery was sought was the negligence of the defendant. A contract between the plaintiff and the defendant, under which the shipment was made, was given in evidence, but it has little to do in the consideration of the case, if there was negligence; and, inasmuch as this is to be presumed from the mere fact of the accident, the contents thereof need not in any way be considered.

The shipment having been made in an ordinary closed box car instead of a stock car, necessitating the use of straw for bedding and the open door for ventilation and the accident having happened apparently from these circumstances, the fact

of the accident presumes negligence and the defendant is liable, unless that presumption is rebutted. The general principle applying to such a case is fully stated in Penna. R. R. Co. v. Raiordon, 119 Pa. 577, and the special question equally well settled in Powell v. Penna. R. R. Co., 32 Pa. 414, in which a similar accident was caused by similar means; in which case Mr. Justice WOODWARD, delivering the opinion of the court, stated very fully the general principles already quoted by us, governing such cases. Without quoting the strong language used in the opinion, it may be enough to quote the syllabus which contains the principle decided: " If a railroad company, employed in the transportation of live stock permit straw or other combustible materials to be used on the cars and a fire originate therefrom, by which the animals are injured, it is such negligence as will render them liable for the loss sustained."

The assignments of error relate to two questions, first, the amount of the liability and, secondly, the question of negligence.

1. As to the liability. After affirming the defendant's second point that " The defendant might lawfully limit its liability for loss occurring from any cause, except its own negligence, and the contract in evidence is a lawful contract to limit its liability to $100 for each horse lost by this fire, unless the fire was caused by the defendant's negligence," the court refused the fourth and fifth points, which were: " 4. In no event can the plaintiff, under the proofs in this case, recover more than $100 for each horse, as limited in the contract of carriage, unless the defendant's negligence caused the loss," and " 5. In no event can the jury find for the plaintiff for more than $200, with interest from the date of the fire which destroyed the horse." The answer to the fourth point was perhaps not strictly correct for, having affirmed the second, that the defendant might lawfully limit his liability, it would seem that such a limitation could be enforced, unless " the defendant's negligence caused the loss." This, however, did the defendant no harm, inasmuch as the points were refused without reading and, in the general charge, the court said : " While, under the special contract which has been offered in evidence, the plaintiff is entitled to demand $100 for each of these

horses, we say to you that under the evidence of the plaintiff and the pleadings, if the plaintiff is entitled to recover at all, he is entitled to recover the full value of the horses." This is a practical affirmance of the fourth point and gives the reasons for refusing the fifth.

2. After affirming the defendant's first and third points, which were : " First. The gist of this action is negligence. The plaintiff must prove negligence on the part of the defendant in order to recover. Negligence is the want of care according to the circumstances." " Third. The mere fact of the loss of the plaintiff's horses by fire is not, under this contract, proof of the defendant's negligence," the court said—which is assigned for error under three different specifications : " The law is that, where an injurious accident occurs to property being thus transported, there arises a presumption of negligence on the part of the common carrier.

" As we understand the law, the burning of this car and these horses was an injurious accident and is to be classed with such accidents as the breakage of a car or a collision with another car or anything of that kind.

" Under the law, therefore, as we understand it, this accident having occurred, the burden of showing that the company was not negligent rests upon the defendant company. Under the law, it is the duty of the defendant company to satisfy you that the injury resulted from causes beyond its control and without fault or negligence on its part."

In view of the general principles which we have quoted at the beginning of this opinion, these extracts from the charge were all proper and placed no greater burden upon the defendant than it, under the law, was bound to assume.

It may be well to remark here that all the employees connected with the train were called as witnesses and that none of them pretends to give any explanation whatever of the origin of the fire.

Upon a review of the whole case, we see nothing in the answers to points and the charge of the court of which the defendant has good ground to complain.

Judgment affirmed.