Zolden *v.* Shenango Valley Traction Co., Appellant.

Argued April 11, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*William P. Whitla,* of *Brockway & Whitla,* for appellant.

*George H. Rowley,* for appellees.

OPINION BY CUNNINGHAM, J., July 12, 1928:

Plaintiffs, father and minor daughter, sued to recover damages from the defendant company for personal injuries suffered by the minor plaintiff and losses resulting to her father through the alleged negligent operation by the servants of defendant of one of its street cars (upon which the minor plaintiff was a passenger) at the time it collided with a truck, described in the statement of claim as "a Ford automobile truck of the Home Lumber Company." The trolley car, filled with passengers, collided with the truck on South Dock Street in the City of Sharon and the minor plaintiff, who was standing in the front vesti-

bule of the car, was severely cut by shattered glass. The basis for recovery pleaded in the statement is that defendant, being a common carrier and having undertaken safely to carry the minor plaintiff for hire, disregarded and neglected its duty to her, and by its servants ran its car "at a high and excessive speed," failed to keep "a proper lookout ahead for other vehicles, using, being upon or crossing" its tracks, neglected to give warning of its approach and did not have its car under proper control, with the result that it collided with the truck.

Verdicts, in amounts which are not complained of if plaintiffs are entitled to recover, were returned in their favor, upon which judgments were entered after motions for a new trial and for judgment n. o. v. had been overruled. Defendant now appeals from these judgments and assigns for error the affirmance of plaintiffs' first point, certain instructions in the charge and the refusal of its motions. An understanding of the theory upon which counsel for plaintiffs evidently tried their case is essential to a consideration of the question here involved. The minor plaintiff, after testifying that she boarded the trolley car about seven o'clock in the morning to go to her place of employment, described the accident thus: "Q. When you entered the street car, Miss Zolden, did you stand up or sit down? A. Why, the car—all the seats were taken, and people were standing in the aisle, and we had to stand, right as we got in. Q. In what part of the car were you standing? A. In the front part. ...... Right up against the window. ....... Q. As you arrived at the point where the accident happened, what was the first thing you saw that attracted your attention? A. A truck stopped on the street car tracks. Q. Now, what did you do, or how were you affected by it? ...... A. I noticed there was going to be a collision, so I closed my eyes; and the next thing I knew, there was a crash. Q. After the crash,

what was done? Did the street car stop? A. The street car stopped, and the conductor opened the door, and I was helped off the street car.''

On cross examination her testimony was: "Q. Did you notice this truck at any time prior to the accident? A. No, sir. Q. You were standing right against the glass, and facing the way in which the car was traveling, were you? A. No, sir. I was turned sideways, my back to the window . ...... talking to a girl ...... at that particular moment I just turned around. ...... ... Q. And where was the truck when you saw it? A. It stopped on the track. Q. Entirely on the track? A. Not exactly, entirely; a little way on the track. . ... ... Q. Were the wheels at all on the tracks, or were they not? A. The two wheels were on the track ...... on the left-hand side. Q. How far over on the track were they? A. I can't tell you; I don't recollect. ... ... . Q. How many street car tracks are there there? A. Two street car tracks. Q. One for the north-bound cars and one for the south-bound cars? A. Yes, sir. Q. And you say the street car stopped as soon as the accident happened? A. Yes, sir.'' Although the evidence is not clear on this point we think it is a fair inference that the front of the trolley car collided with the rear of the truck.

Plaintiffs, having thus shown the happening of the accident, introduced testimony as to the extent of the injuries to the minor plaintiff and the expenses incurred by her father, but made no effort to sustain by evidence their averments relative to excessive speed, operation without keeping a proper lookout ahead for other vehicles, or any of the other negligent acts charged in the statement. This record indicates that the case was tried for plaintiffs upon the theory that it came within the rule, applicable to railroad and street passenger railway companies alike, that, where a passenger on a car is injured, without fault of his own, there is a legal presumption of negligence,

casting upon the carrier the onus of rebutting it: Laing v. Colder, 8 Pa. 479, and the numerous cases following it. The learned trial judge adopted this theory and overruled defendant's motion for a nonsuit, in support of which attention was directed to the fact that there was no evidence indicating excessive speed, where the truck came from, how long it had been on the track or the relative positions of the trolley car and the truck when the truck "stopped on the track" and no evidence of any negligent act on the part of the servants of defendant; that there was no evidence from which it could be inferred that defendant had any control over the operation of the truck; and that plaintiffs' testimony was to the effect that the car stopped as soon as the accident happened. The defendant offered no testimony but presented a point for binding instructions, which was refused.

The portion of the charge assigned for error reads: "We would say to you that when, in the performance of this contract [to transport passengers], a passenger is injured without fault on his or her part in a collision upon the tracks of the defendant company, the law raises a presumption of negligence, and throws on the company the burden of showing it did not exist. This legal presumption may be repelled by proving that the injury resulted from an unavoidable accident, or that it was caused by something against which no human foresight and prudence could provide. Whether such circumstances existed as will repel the legal presumption of negligence is a question of fact to be determined by the jury from the evidence in the case. We would say to you that in this case, if you believe from the evidence that the plaintiff, Cecile Zolden, on June 9, 1924, was a passenger on board the defendant's street car, and that there was a collision with a truck at the time and place alleged by the plaintiffs, and that she received injuries in such collision, then the burden is shifted upon the

defendant to show to the satisfaction of the jury that the collision was caused through no negligence or carelessness of defendant's agent; and unless it is so shown to the jury you should find a verdict for the plaintiffs.'' This instruction was reinforced by the affirmance of plaintiffs' first point, namely: ''There is an unbending rule (applicable to railroad and street car passenger railway companies alike) that, where a passenger on a car is injured, without fault of his own, there is a legal presumption of negligence, casting upon the carrier the onus of rebutting it; and it is immaterial that the collision was not due to any defect in the car on which the plaintiff was riding, or the machinery connected with it; for the presumption of defendant's negligence arises not only when the injury is caused by a defect in the road, cars or machinery, or by want of diligence or care in those employed, but by any other thing which the company can and ought to control as a part of its duty to carry the passenger safely.'' The trial judge correctly stated the general rule applicable to cases of injury to passengers while in the course of transportation and, if the collision in which the minor plaintiff in this case was injured had occurred between the trolley car, upon which she was a passenger, and another trolley car, or other vehicle, under the control of defendant, or if there had been any evidence, direct or circumstantial, from which it could reasonably be inferred that the motorman failed to exercise care according to the circumstances, we would not be disposed to disturb the judgments. There are, however, equally well established exceptions to the general rule. A material fact appearing from the pleadings and evidence in this case is that the collision here was with a truck not under the control or management of the defendant company and, if the accident was caused by the sole negligence of the driver of the truck, there should be no recovery against this defendant for, as stated in Federal Street and Pleasant

Valley Railway Company v. Gibson, 96 Pa. 83, 86, there would then be no privity between the defendant company and the driver of the truck. In Blew v. Philadelphia Rapid Transit Co., 227 Pa. 319, the plaintiff was injured in a collision between a trolley car of the defendant and an ash cart, under which circumstances our Supreme Court said: ''The learned trial judge was clearly right in charging that no presumption of negligence arose from the fact that the plaintiff was injured while a passenger. The accident did not result from a defect in the means or appliances of transportation, but from a collision between the side of the car while it was on its track and an object not under the control or management of the defendant,'' citing Railway Co. v. Gibson, supra. See also Gaines v. Chester Traction Co., 224 Pa. 52; Kurts v. Philadelphia Rapid Transit Co., 244 Pa. 179; and Kelly v. P. B. & W. Railroad Co., 270 Pa. 149. Again, it is to be noted in this case that the accident happened on a street in a municipality upon which the defendant company had a double street car track; that other vehicles had a right to use the space occupied by these tracks, subject to the superior rights of the defendant company; and that plaintiffs offered no evidence tending to show how long the truck had been within the view of the motorman or how long it had stopped upon the track prior to the collision. Upon a review of this record we are of opinion that the learned trial judge erred in instructing the jury that if they believed plaintiffs' evidence the burden had been shifted upon defendant to show to their satisfaction that its servants had not been negligent, ''and unless it is so shown to the jury you should find a verdict for the plaintiffs.'' We think the circumstances to which we have referred bring this case within the exception to the general rule relied upon by plaintiffs and that the burden remained upon them to show some negligent act or acts of defendant or its servants,

The case of Tilton v. Philadelphia Rapid Transit Company, 231 Pa. 63, cited and relied upon by plaintiffs and by the trial judge, seems to be a strong case the other way. There the passenger on a street car was injured by a sudden and violent stop, apparently made in order to avoid a collision with a wagon, and the question involved was the propriety of the entering of the non-suit. In reversing the Supreme Court said: "The testimony of the plaintiff showed that the motorman did not manage his car in the manner usually and ordinarily proper in making stops, and that this action resulted in injury to the plaintiff. This evidence placed the duty of explanation and justification upon the defendant; and the judgment of compulsory non-suit should not have been entered." It is also there said that "under ordinary circumstances, with the car under proper control, when it is brought to a stop by the motorman, it is not done so abruptly as to injure a passenger, by throwing him forward against the seat in front of him." The decision, as we understand it, is placed upon the ground that there was sufficient evidence, from which a jury could infer that the motorman had stopped the car in a negligent manner and with needless violence, to require explanation or justification by the defendant. We have indicated that we do not find such evidence in this record.

We shall not discuss defendant's contention that it is entitled to judgment in its favor non obstante because we believe that the ends of justice will best be served by affording the parties an opportunity to develop all the pertinent facts attending the accident in which the injuries were received.

The judgments are reversed and a venire facias de novo is awarded.