*c f. ⟨illegible⟩*

# Farnham *et al.* *versus* The Camden and Amboy Railroad Company.

1. A common carrier may by a special contract and, perhaps, by notice, limit his liability as to every cause of injury, excepting that arising from his own or his servants' negligence.

2. A bill of lading, limiting the responsibility of the carrier, signed by his agent, delivered to the shippers, accepted by them and sent to their agent as authority to receive the goods, was the terms on which the shippers shipped the goods and on which they were received.

3. By the common law the carrier is an insurer of the goods intrusted to him, excepting as damaged by the act of God or the public enemy.

4. Under a contract limiting his liability, the carrier is an insurer to the extent of its terms, unless it be shown that the loss has occurred through his wilfulness or negligence.

5. With certain exceptions as to innkeepers and common carriers, the burden of proof of negligence is on the bailor, and proof merely of the loss is not sufficient to put the bailee on his defence.

6. The common-law presumption is that every person is presumed to do his duty until the contrary is proved.

7. It is a sufficient defence if the bailee accounts for a loss in a way not implicating himself in negligence unless the bailor proves negligence.

8. A carrier by condition in the bill of lading limited his responsibility as insurer,—the goods were transported by him to the place of destination, put into his shed on his wharf where he had four watchmen; a fire, from an unknown cause, took place in his steamboat lying at the wharf (the boat being fully manned), which consumed the goods in the shed. *Held*, that the proof of negligence was on the shipper. WOODWARD, C. J., dissenting.

March 2d 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., absent.

Certificate from Nisi Prius.

This was an action to January Term 1864, by Farnham, Kirkham & Co. against the The Camden and Amboy Railroad Company, in which the following case was stated for the opinion of the court in the nature of a special verdict.

The defendants are a corporation under the laws of New Jersey, and all laws referring to the said corporation may be considered as if herein fully set forth.

The defendants are engaged in the business of transporting freight from Philadelphia to New York, via railroad from Camden to Amboy and steamboat from Amboy to New York.

On the 8th day of July 1864, the plaintiffs, who were merchants in the city of Philadelphia, and regular shippers of freight to be transported by the defendants, delivered to the defendants for transportation to New York, the bales of goods mentioned in the bill of lading—a copy of which is hereto annexed, marked " Exhibit A," and that the said bill of lading was then signed by a duly authorized agent of the defendants and delivered to the plaintiffs, by whom the same was accepted and transmitted to their agent in New York, as his authority to receive the goods.

[Farnham *v.* Camden and Amboy Railroad Co.]

The said goods weighed 3220 pounds, and were of the value of $6778.24.

On the day when the goods were delivered for transportation, there was placed in a conspicuous place in the receiving office of the defendants, in the city of Philadelphia, and also at the receiving offices at Camden, New York and intervening points, a notice, of which the paper hereto annexed, marked "Exhibit B," is a copy, wherein the law of the state of New Jersey, therein referred to, is correctly and at large set forth, which notice had been thus placed since the passage of said act.

The aforesaid bales of goods were in due course of transportation safely transported to the defendants' wharf in the city of New York, where they arrived on the night of Saturday, July 9th, or on the morning of Sunday, July the 10th 1864, and were placed under a shed on the wharf ready for delivery, and while there and before the plaintiffs had notice of their arrival or opportunity to remove them, a fire broke out on board a steamboat called the John Potter, belonging to the defendants and then lying at the wharf, which totally consumed the steamboat and her cargo, and also the defendants' wharf and sheds and all the goods thereon and thereunder, including the plaintiffs' twenty-four bales of goods, the origin of which fire is totally unknown.

Four watchmen employed by the defendants were on duty at the time on the wharf and boat, and the crew was on board the steamboat.

The defendants have paid to the plaintiffs without prejudice the sum of $3220, being at the rate of $1 per pound—the amount for which they admit their liability under the bill of lading.

If the court shall be of opinion that the defendants are liable to the plaintiffs for the full value of the goods, then judgment shall be entered for the plaintiffs in the sum of $7422.17 (being the value of all the goods with interest to this date), less the sum of $3525.90 (that being for 3220 lbs. at one dollar per pound, with interest to date), but if the court shall be of opinion that the defendants are not liable for more than $100 per 100 lbs., amounting as above to $3525.90, which has been already paid, then judgment shall be entered for the defendants.

### Exhibit A.

CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY.

\*      \*      \*      \*      \*      \*      \*      \*

Philadelphia, July 8th 1864.

Received from Farnham, Kirkham & Co.

Twenty-four Bales D Goods.   (The numbers follow.)

Marked T. W. S., New York,

which we promise to deliver (subject to the conditions expressed

[Farnham *v.* Camden and Amboy Railroad Co.]

on the back of this receipt) to *T. W.* Shannon or order, at our office in New York, upon payment of freight therefor.

Freight $9.00, paid.

W. I. WAY,
Receiving Clerk.

(In order to avoid detention of draymen, shippers are requested to fill up receipt and duplicate.)

### CONDITIONS OF SHIPMENT.

The responsibility of the company as carriers of the within named goods is hereby limited so as not to exceed $100 for every 100 lbs. weight thereof, and at that rate for a greater or less quantity, the shipper declining to pay for any higher risk. The company will insure to any amount if desired. In case of loss or damage, due proof of the amount thereof to be made by the claimant without delay.

Looking-glass plates, &c.,   *   *   and all other fragile articles, will be taken only at the owner's risk of breakage. No allowance will be made for deficiency of   *   *   fruit, unless the packages are in perfect shipping order—if casks, barrels or kegs, to be head-lined; if boxes or baskets, to be securely covered with canvas; nor for loss of hats, &c.,   *   *   unless the cases are properly strapped when shipped; or for damage or loss of perishable articles by heat, cold, unavoidable accidents or delays, nor for leakage of liquors or liquids of any kind, nor for rust on iron or other metals.

### EXHIBIT B.

### NOTICE.

*Responsibility of the Company as Carriers limited to $100 per 100 lbs.*

THE CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY

Hereby give notice, in pursuance of law, that they have limited, and do hereby limit, their responsibility as carriers of goods, so as not to exceed *one hundred dollars for every one hundred pounds weight thereof*, and at that rate for a greater or less quantity; but will insure goods, if desired, at the rate of eight cents per ton per mile for the distance carried, for every $200 insured on 100 pounds of goods, and at that rate for a greater or less quantity.

Goods carried from New York to Philadelphia, or from Philadelphia to New York, will be insured (if desired), at the rate of sixteen cents for every $100 insured.

Copy of the law of the state of New Jersey, in reference to the liability of railroad companies, passed March 10th 1853.

[Farnham *v.* Camden and Amboy Railroad Co.]

" Any railroad company of this state may, by giving notice to any person or persons offering goods, merchandise or baggage, for transportation on the railroad, or in the boats or vessels of such company, limit their responsibility as carriers thereof, to $100 for every 100 pounds weight of such goods, merchandise or baggage, and at that rate for a greater or less quantity, unless such person or persons so offering such goods, merchandise or baggage, for transportation, shall pay to said company, by way of insurance, for any additional amount of responsibility to be assumed, such rate or rates as may be charged by said company therefor, not to exceed the legal rates for transporting 100 pounds of goods or merchandise on such railroad, or in such boats or vessels, for every $200 of additional responsibility, assumed on each 100 pounds of such goods, merchandise or baggage, and at that rate for a greater or less quantity ; and a general notice of the limitation of such company's responsibility, placed in a conspicuous place, at or in the receiving office of such company, where goods, merchandise or baggage are usually received by them for transportation, and inserted in the bills of lading or receipts given for such goods or merchandise, and in the tickets delivered to passengers, shall be deemed sufficient notice under this section."

On the 17th of March 1866, the Court of Nisi Prius (STRONG, J.) entered judgment for the defendants.

The plaintiffs removed the case and assigned for error thus entering judgment.

*Henry M. Phillips*, for plaintiffs in error.—At common law it is the duty of a common carrier to transport goods.

He is legally responsible for all losses, from whatever cause arising, the acts of God and the public enemy alone excepted.

As an insurer he may demand a premium proportioned to the hazard of his employment ; Coggs *v.* Bernard, 2 Ld. Raym. 909 ; Lane *v.* Colton, 1 Id. 646, 655, 1 Salk. 143 ; Riley *v.* Horn, 5 Bing. 217 ; Lockhart *v.* Lichtenthaler, 10 Wright 151.

Agreements to avoid their common-law liability as insurers will not excuse them from gross carelessness or negligence ; and the onus of showing that the cause of the loss was within the terms of the exception, and also that there was no negligence, lies on the carrier : Angell on Carriers, §§ 267, 268, 275 ; Hollister *v.* Nolen, 19 Wend. 234 ; Cole *v.* Goodwin, Id. 251 ; Sager *v.* Railroad Co., 31 Maine 228 ; Swindler *v.* Hilliard, 2 Richardson 286 ; Davidson *v.* Graham, 2 Ohio 133 ; Gould *v.* Hill, 2 Hill 623, 2 Kent 607, note *c* ; Camden and Amboy Railroad Co. *v.* Baldauf, 4 Harris 67, decided in 1851 ; Penna. Railroad Co. *v.* McCloskey's Administrator, 11 Harris 526 ; Illinois Central Railroad Co. *v.* Read, 37 Ill. Rep. 37 ; Hooper *v.* Wells, Am. Law Reg., vol. 5 N. S., 16 ; Owners of the Mary Washington

[Farnham *v.* Camden and Amboy Railroad Co.]

*v.* Ayres, Am. Law Reg., Sep. 1866, 692; Beekman *v.* Shouse, 5 Rawle 179; Clark *v.* Spence, 10 Watts 337.

The statute of New Jersey cited cannot govern in the courts of Pennsylvania. The contract was made in this state and the suit was brought here, the interpretation of the contract and the rule for its government must be the *lex loci:* Story on Conflict of Laws, § 272; Bank of the United States *v.* Donnally, 8 Peters 361; Wilcox *v.* Hunt, 13 Id. 378; Hale *v.* The New Jersey Steam Navigation Co., 15 Conn. 539.

*J. E. Gowen,* with whom was *A. I. Fish,* for defendants in error.—1. The limitation of responsibility in the bill of lading and the printed notices was legal.

2. The plaintiffs must be presumed to have known and acquiesced in the limitation when their goods were delivered for transportation.

3. In view of the facts ascertained by the case stated, the responsibility of the defendants cannot be enlarged through any presumption of negligence·or misconduct on their part.

One who has intrusted goods to a common carrier cannot be permitted to say that he had no notice that the acceptance was qualified, when notice was given, not only by a placard which he could not fail to see, but by a paper actually put into his hands.

The non-delivery of the goods intrusted to a carrier's charge is alone sufficient to render him responsible, but where the non-delivery is accounted for, and it does not appear that there was any negligence on the part of the bailee, the maxim *quod non apparet, non est,* will apply as in other cases: The Railroad Co. *v.* Baldauf, 4 Harris 67; Beekman *v.* Shouse, 5 Rawle 189; Clark *v.* Spence, 10 Watts 335; Goldey *v.* The Pa. Railroad Co., 6 Casey 242; The N. J. Steam Nav. Co. *v.* The Merchants' Bank, 6 Howard 384; Marsh *v.* Horne, 5 B. & C. 322; Harris *v.* Packwood, 3 Taunt. 264; Angell on Carriers, § 276; Story on Bailments, § 573; Greenleaf on Evidence, § 218; Sager *v.* The Railroad Co., 31 Maine R. 228; Wyld *v.* Pickford, 8 M. & W. 460.

The case is in all material respects identical with that of a carrier offering to transport goods of a certain value at one rate, and those of a higher value at a higher rate. · ·

The common-law liability of a common carrier may be limited, qualified and restricted, either by a special acceptance from, or by a special contract with the owner or shipper; provided such special acceptance or special contract do not attempt to screen the carrier against losses by his own misconduct or negligence: Angell on Carriers, chap. vii.; Cole *v.* Goodwin, 19 Wend. 251; S. C., Angell on Carriers, Appendix, p. 32, 2d ed.; Farmers' and

[Farnham *v.* Camden and Amboy Railroad Co.]

Mechanics' Bank *v.* Champlain Transportation Co., 23 Vermont 186, 1851 ; Carr *v.* The L. & Y. R. W., 14 Eng. L. & Eq. 340 ; Story on Bailments, § 549, § 549 a, 549 b, 7th ed.; Southcote's Case, 4 Coke's Rep. 84 ; Farmers' and Mechanics' Bank *v.* Champlain Trans. Co., 16 Verm. 52, 18 Id. 131, 23 Id. 205 ; Paradine *v.* Jane, Aleyn 26–7 ; Morse *v.* Slue, Ventris, part 1, pp. 190, 238 ; s. c., 2 Lev. 69, 3 Id. 268, Show. 29, Dyer 190, Raym. 220, 1 Mod. 85, 3 Keb. 72, 112, 135, 2 Id. 866, Molloy 4, 9, 10, 11, 203 ; Kenrig *v.* Eggleston, Aleyn 93 ; York Co. *v.* The Central Railroad Co., 3 Wallace 107 ; Cole *v.* Goodwin, 19 Wend. 251 ; Gould *v.* Hill, 2 Hill 623 ; The Peninsular and Oriental Steam Navigation Co. *v.* Shand, 11 Jurist 771 ; Dorr *v.* New Jersey Steam Nav. Co., 1 Kern. 484 ; N. J. Steam Nav. Co. *v.* Merch. Bank, 6 How. 382 ; Story on Bail., § 549 ; Chitty on Cont. 152 ; 2 Kent Com. 606 ; Angell on Carriers, §§ 59, 220, 221 ; Bingham *v.* Rogers, 6 W. & S. 495 ; Laing *v.* Colder, 8 Barr 479 ; Chouteaux *v.* Leech, 6 Harris 224 ; Whitesell *v.* Crane, 8 W. & S. 373 ; Van Toll *v.* S. E. Railway Co., 12 Scott 87, s. c. 104 E. C. L. R. ; Hale *v.* N. J. Steam Nav. Co., 15 Conn. 539.

The doctrine that the carrier is legally responsible for all losses, from whatever cause arising, the act of God and the public enemy alone excepted, has no application in this case, where the parties have expressly provided a different rule of liability : Steamboat New World *v.* King, 16 How. 475 ; Shiells *v.* Blackburne, 1 H. Bl. 161 ; Wilson *v.* Brett, 11 Exchequer 116 ; Grill *v.* Iron Screw Coll. Co., 1 Law Rep. 612 ; O'Brien *v.* The Phila., Wilmington and Baltimore Railroad Co., 6 Am. Law Rep. 364 ; Duff *v.* Budd, 3 Brod. & Bing. 177 ; Riley *v.* Horne, 5 Bing. 217 ; Batson *v.* Donovan, 4 B. & Ald. 21 ; Citizens' Insurance Co. *v.* Marsh, 5 Wright 394 ; Hays *v.* Kennedy, Id. 378 ; Thorogood *v.* Marsh, Gow R. 105 ; Story on Bailment, § 551 ; Peck *v.* N. Staffordshire Railway, 32 Law J. R. 241 ; Pa. Railroad *v.* Henderson, 1 P. F. Smith 315.

The opinion of the court was delivered, May 13th 1867, by Thompson, J.—It does not admit of a doubt that a common carrier may by a special contract, and perhaps by notice, limit his liability for loss or injury to goods carried by him, as to every cause of injury, excepting that arising from his own or the negligence of his servants. A great variety of cases cited in the very able argument of the learned counsel for the defendants, establish this as the rule in England, from Southcote's Case, 4 Coke's Rep. 84, A. D. 1601, down to The Peninsular and Oriental Steam Navigation Co. *v.* The Hon. Farquhar Shand, 11 Jurist 771, in 1865. The same rule generally holds in the several states in this country, as will appear in Story on Bailments, § 549 notes a and b ;

[Farnham *v.* Camden and Amboy Railroad Co.]

Dow *v.* New Jersey Steam Navigation Co., 1 Kern. 484; and in the Supreme Court of the United States, York Co. *v.* The Central Railroad Co., 3 Wall. 107. This has long been the rule in this state, as is shown by Bingham *v.* Rogers, 6 W. & S. 495; Lang *v.* Calder, 8 Barr 479; The Camden and Amboy Railroad Co. *v.* Baldauf, 4 Harris 67; Chouteaux *v.* Leech, 6 Id. 224; Goldey *v.* The Pennsylvania Railroad Co., 6 Casey 242; and Pennsylvania Railroad Co. *v.* Henderson, 1 P. F. Smith 315.

That there was a special acceptance limiting the defendants' liability to one dollar a pound in case of loss or destruction, in this case, is among the facts found in the case stated. The bills of lading, duly executed and signed by the agents of the defendants, containing the limitation, it is agreed were delivered to the plaintiffs, accepted by them and remitted to their agent at New York as his authority to receive the goods. These, therefore, were the terms on which the transporters shipped their goods and on which they were received to be transported. As this was a limitation of the common-law liability, we are to presume, of course, that the charge for transportation was in proportion to the risk, an element of charge in all such cases. The conditions of shipment on the bill of lading show this, by expressing the limitation to be. because of the "shipper declining to pay for any higher risk." We have, therefore, a contract to transfer goods under a special agreement as to liability, and a consideration based, we must presume, on the undertaking in its limited form.

This limitation, we are warranted in saying, took the case out of the law of common carriers and carried it into one of the numerous classes of bailments, and it henceforth became liable to be governed by the law of the class.

The reason will be apparent on a moment's reflection. The common law defines the duty and the liability in the one case— in the other the law is set aside by agreement of the parties, and they make a law for themselves, and thus they stand on the relation they create, and not on the law of common carriers.

By the common law the carrier is an insurer of the goods intrusted to him, excepting so far as they are damaged by the act of God or public enemies.

By a contract limiting liability he is an insurer by agreement, and according to its terms. If there be a loss, the agreement furnishes the extent of liability and is confined to that, unless he can show that the loss occurred from the wilfulness or negligence of the carrier. His liability is as a private carrier or bailee, a consequence of the limitation. This is settled in various forms of expression in numerous books and cases of authority. In Angell on the Law of Carriers, § 268, it is said: "Therefore, as there has been occasion before to show that in cases of contract

[Farnham *v.* Camden and Amboy Railroad Co.]

and by means of notices, common carriers descend only to the situation of private carriers for hire."

In York Co. *v.* The Central Railroad Co., *supra*, this language is found : " By the special agreement the carrier becomes, with reference to the particular transaction, an ordinary bailee ; a private carrier for hire."

In Goldey *v.* The Pennsylvania Railroad Co., 6 Casey 242, *supra*, we said the same thing in these words : " The most it can do (the limitation), is to relieve them from these conclusive presumptions of negligence which arise when an accident happens that is not inevitable even by the highest care, and to require that negligence be actually proved against them." In the N. J. Steam Navigation Co. *v.* The Merchants' Bank, 6 Howard 384, the principle is thus stated : " The respondents having succeeded in restricting their liability as carriers by the special agreement, the burden of proving that the loss was occasioned by the want of due care or by gross negligence, lies on the libellants, which would be otherwise in the absence of any such instruction." The same principle appears in Marsh *v.* Horne, 5 B. & C. 322, where the limitation as to the extent in value of the liability was held to vary the relation and requires proof of negligence against the carriers. So in Harris *v.* Packwood, 3 Taunt. 264, this rule was applied. So also to this effect are Angell on Carriers, § 276 ; Story on Bailments, § 573 ; 2 Greenleaf on Evidence, § 218 ; and Sager *v.* The B. R. Co., 31 Maine Rep. 228. Without pursuing further this line of thought we now proceed to determine how the case stands affected by these principles.

The plaintiffs shipped goods on the 8th of July 1864, by the defendants' line to New York, under an acceptance of limited liability as well as notice. The goods were safely carried by the defendants to their wharf at New York, and placed under a shed on the wharf ready for delivery ; but before the plaintiffs had notice of their arrival or opportunity to remove them, a fire broke out on board a steamer of the defendant's lying at the wharf, which entirely consumed the boat with her cargo, and also the wharf and shed and the goods therein, including the goods of the plaintiffs. The origin of the fire remains unknown. Watchmen employed by the defendants were on duty at the time, and the crew of the steamer were on board. These facts all appear in the case stated. It also appears that the defendants have paid to the plaintiffs the full amount of liability stipulated for, and assumed in case of loss in the bill of lading. Are they bound to the extent of the entire loss ? If so the exception or limitation would amount to nothing, not, it is true, because the limitation is void, but on a question regarding the burthen of proof.

Assuming the contract or special acceptance of the goods, to be carried by the defendants to bring them within the doctrine

[Farnham *v.* Camden and Amboy Railroad Co.]

applicable to bailments for compensation, the rule seems clearly to be : " That where a demand of the thing loaned is made, the party must return it, or give some account how it was lost.

" If he shows a loss, the circumstances of which do not lead to any presumption of negligence on his part, then the burden of proof might, perhaps, belong to the plaintiff to establish it :" Story on Bailments, § 278.  " But if a suit should be brought against the pawnees for a negligent loss of the pawn, then it would be incumbent on the plaintiff to support the allegations of his declaration by proper proofs, and the *onus probandi* in respect to negligence would be thrown on him :" Id., § 339, and note 4. " With certain exceptions which will hereafter be taken notice of (as to innkeepers and common carriers), it would seem that the burden of proof of negligence is on the bailor ; and proof merely of the loss is not sufficient to put the bailee on his defence :" Id., § 410.  The text is supported by many authorities.  The common law, consistent with itself in this, as in all other cases, lays the basis of this rule in the presumption that every person is presumed to do his duty until the contrary is proved.  This is a great modification of the Roman law, which held the acts of faithlessness in a bailee as infamous and compelled him to acquit himself thereof by proof.  The French rule as to proof is the same.  The rule in England and in many of the states, if not all, is what Story states it to be ; *supra.*  See Marsh *v.* Horne, 5 B. & C. ; and Harris *v.* Packwood, 3 Taunt., *supra ;* and Wyld *v.* Pickford, 8 M. & W. 460.

In Buckham *v.* Showers, 5 Rawle 179, speaking of a case of special acceptance to carry, and of suit against the bailee, Rogers, J., says : " Less than positive proof" (of why the goods never reached their destination) " would suffice ; but some account should be given from which the jury would be warranted to infer that the goods had either been discharged, or had been lost by accident, or had gone into other hands than the defendants or his agents."

This case shows that where a bailee accounts for a loss in a way not to implicate himself in a charge of negligence, this is a sufficient defence, unless the plaintiff proves negligence.  This is the plaintiffs' reply to the plea in excuse of performance.  It is an affirmative position and must be proved by the party alleging it.  It is true the plaintiff in the first instance, taking the present case as illustration, must have shown if it had been tried in the ordinary way, that he delivered the goods to the defendants to be carried to New York, that their agent called for them and could not get them.  There he might have rested to hear the reply, and that would be, proof that the goods were accidentally consumed by a fire breaking out on the steamboat at the wharf which consumed the boat, the wharf and buildings of the defend-

[Farnham *v.* Camden and Amboy Railroad Co.]

ants and the goods in them, including the plaintiffs'; that the boat had its complement of men on board and the defendants four watchmen on the wharf. Out of these facts negligence could not be inferred. The plaintiffs' reply would be, therefore, "All that may be true; but the fire originated in your negligence." Is it not perfectly clear that as that was not inferable from the defendants' case that the plaintiffs must prove it? This is not to be doubted. The same doctrine with that above cited, is also to be found in Clark *v.* Spence, 10 Watts 335; in Goldey *v.* Pennsylvania Railroad Co., 6 Casey, *supra;* and the N. J. Steam Nav. Co., 6 Howard 384.

We think, therefore, that as the contract to carry these goods was as bailees for hire, and not as common carriers, and as they did carry them according to their agreement to the terminus of their line, and they were there destroyed by fire, the defendants are not liable in the absence of proof of negligence, to respond to the plaintiffs' claim. The doctrine is firmly settled that a common carrier cannot limit his liability so as to cover his own, or his servants' negligence. Nor do I suppose this possible of any bailee. But it is clear that by contract, he may be placed in the position of a limited insurer, excepting negligence, instead of an insurer against everything but the act of God and public enemies. If he be compensated only for the former risk instead of the latter, at the choice of the consignor, it would be contrary to common honesty to compel him to make good a risk he was not paid for assuming. We think the case was well decided at Nisi Prius, and the

Judgment is affirmed.

WOODWARD, C. J.—I dissent as to the *onus probandi.*