# Trexler, Appellant, *v.* Baltimore & Ohio Railroad Company (No. 2).

*Carriers—Common carriers—Railroads—Contract—Conflict of laws—Limitation of liability.*

Where a contract containing a stipulation limiting liability for negligence on the part of a common carrier is made in one state, but with a view to its performance, by transportation through or into one or more other states, it should be construed in accordance with the law of the state where its negligent breach causing injury occurs.

In West Virginia a common carrier may, by special agreement, just and reasonable in itself, and fairly made between itself and the consignor of a horse at the time of the shipment, fix the value of such horse, upon consideration that the rate of charge for transportation shall be commensurate with the value of the horse thus ascertained, and may also limit its liability in cases of loss to the amount thus agreed upon, even though the loss may be the result of negligence on the part of the carrier, provided said negligence be not gross, wanton or wilful, but cannot wholly exempt itself from liability for loss resulting from negligence.

In West Virginia a common carrier is entitled to be fairly informed as to the value of the property confided to his care; and where a shipper enters into an agreement with a carrier as to the value of the property shipped, and receives the benefit of a low rate by reason of placing a low valuation upon the property, he is estopped from claiming or recovering another and higher valuation after the loss occurs, although said loss may be the result of negligence on the part of the carrier, provided the same is not gross, wanton or wilful.

Zouch v. Chesapeake & Ohio Ry. Co., 36 West Va. 524 (15 S. E. Repr. 185), followed.

In an action against a railroad company to recover damages for the loss of a stallion, it appeared that the plaintiff's agent had notice that he had an election to ship the property subject to the conditions of the uniform bill of lading, in which case it would be carried at tariff rates, or to ship it at "carrier's liability," in which case the freight charges would be twenty per cent higher, subject to a minimum increase of one per cent per 100 pounds; and that having this election he ordered the property to be shipped and the carrier undertook to transport it subject to the conditions of the uniform bill of lading, one of which was that in case of loss the liability of the carrier should be restricted to the value agreed upon even though it might be less than the actual value. The horse was lost through the negligence, but not through the gross negligence of the carrier. *Held*, that the case was within the rule enunciated in Zouch v. Chesapeake & Ohio Ry. Co., 36 West Va. 524 (15 S. E. Repr. 185), and that the plaintiff could only recover the amount mentioned in the contract.

*Negligence—Carriers—Railroads—Burden of proof—Evidence.*

In an action to recover for the loss of a horse shipped under a limited

liability contract, the burden of proof is upon the plaintiff where it appears that the horse was killed in the burning of a car in which it was being transported, and that the plaintiff's agent in charge of the horse was in the car at the time of the fire and had control of the disposition of the straw and hay in the car.

Argued Oct. 25, 1904.  Appeal, No. 63, Oct. T., 1904, by plaintiffs, from judgment of C. P. Bedford Co., April T., 1902, No. 234, on verdict for plaintiff in case of J. F. Trexler and John L. Trexler, trading as Trexler Brothers & Co., v. Baltimore & Ohio Railroad Company.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Appeal dismissed.

Trespass to recover damages for the loss of a horse.  Before WOODS, P. J.

The facts appear by the opinion of the Superior Court and by the report of Trexler v. Baltimore & Ohio Railroad Company, No. 1, supra.

The court charged in part as follows:

[If you find from the evidence that the accident was caused by the carelessness of the defendant company alone, then Trexler Brothers would be entitled to recover.  When this horse was shipped they entered into what has been termed a live stock contract, wherein they placed a value of $400 on this horse.  After having considered the law as laid down by the Supreme Court of Pennsylvania, and the court of appeals of West Virginia, we have reached the conclusion that it is our duty to instruct you that they are limited to the value placed upon this horse by Mr. Reynolds, acting for them, when the horse was shipped, and we, therefore, say to you that if you find the defendant company guilty of negligence and said negligence was not contributed to, in any way, by John E. Hess, they cannot recover any greater sum than the $400, the value placed on him when shipped, with interest from February 5, 1902.] [1]

2. Cars containing live stock and man require a greater degree of care than ordinary freight, and it was the duty of the railroad company to inform its employees, whose duty it was to inspect its cars, that a man and horse were in car No. 81,525,

on the fifth section of No. 97, and if the company failed to inform the car inspectors in advance of the arrival of the car containing the horse and man, and the car was set on fire by the torch in the hands of one of the inspectors of the said defendant company during the inspection of the car, which could have been avoided by the inspector if he had possessed this information, it was negligence on the part of the company, and the verdict should be for the plaintiff. *Answer:* This point is refused with the following comment: As stated in the general charge, when John E. Hess undertook to accompany this horse, he took upon himself the dangers incident to this mode or way of travel, and by so doing no greater care was placed upon defendant company than they were already bound to exercise. [2]

3. The defendant company is a common carrier and is liable for all losses that it could have prevented by skill and foresight, and the burden is on it to show that the injury to the plaintiffs' horse was such that it could not have been prevented, and if the jury believe the straw in the car was set on fire by the negligence of the agents of the defendant company, and that the accident could have been prevented if the defendant company had informed its car inspectors that a man and horse were in car No. 81,525, their verdict must be for the plaintiff. *Answer:* This point is refused with the following comment: As stated in the general charge, when John F. Hess undertook to accompany this horse, he took upon himself the dangers incident to this mode or way of travel, and by so doing no greater care was placed upon defendant company than they were already bound to exercise. [3]

4. The defendant company must show that the accident was not caused by the negligence of its servants or employees, and if they fail to satisfy the jury of this fact by the preponderance of the evidence, the jury should return a verdict for the plaintiff for such damages as it deems just under the evidence. *Answer:* Refused. It is incumbent upon the plaintiff to satisfy the jury by a preponderance of testimony that the accident occurred by the employees of defendant company. [4]

7. Under the evidence in the case, if the jury believe that at the time H. P. Reynolds delivered the horse to the agent of the Huntingdon & Broad Top Railroad Company for shipment to

Pennsboro, West Virginia, he instructed the agent to ship the horse first class, and that the rules of the company prohibited said agent from fixing a valuation upon the horse in excess of $400, without special permission from the general manager of the railroad company, of which fact the said agent did not notify the said H. P. Reynolds, and that the said H. P. Reynolds, acting for the said plaintiff, did not discuss the rate of freight that was to be paid, or enter into any agreement whatever with Mr. Crum, the agent of the Huntingdon and Broad Top Railroad, with regard to the amount of freight that was to be paid, or the value of the horse, and that the amount of freight was to be paid at Pennsboro, West Virginia, where the horse was to be delivered, and the jury should further believe that the accident in the yards at Grafton, West Virginia, was occasioned by the negligence of the agents of the defendant company, then its verdict should be in favor of the plaintiff for the full value of the horse, as found by them from the evidence in the cause, regardless of the shipper's order, signed by H. P. Reynolds for Trexler Brothers & Company. *Answer:* This point is refused. [5]

8. That while the note attached to the shipper's order, signed by H. P. Reynolds, may have given him an option to ship the horse at a higher valuation, yet the evidence in the case does not disclose that any such election was made, or that he was requested to make any such election by the agent of the railroad company but it appearing from the evidence that the only discussion on the freight to be paid was that the horse was to be shipped first class, and with the understanding that the amount of freight was to be paid at Pennsboro, West Virginia, and to be determined there by the defendant company, it left in the hands of the defendant company the power to charge such rate of freight as, under its rules, were commensurate with the shipment of a horse of this character at first-class rate. *Answer:* Refused, and for further answer see general charge. [6]

9. That there is not sufficient evidence in this case to show a special contract between Trexler Brothers and the defendant company to warrant a limitation in the liability of the company for loss sustained by its negligence, under the law of West Virginia, and if the jury believe that this horse was injured in

the yards of the defendant company at Grafton, West Virginia, through the gross negligence of the company, or its employees, their verdict should be for the plaintiff for the full value of the horse. *Answer:* This point is refused. [7]

10. If the jury believe that the car, containing the horse and John E. Hess, was set on fire by torches in the hands of inspectors in the yards of the defendant company at Grafton, West Virginia, which resulted in the injury of the horse, it was such negligence as would entitle the plaintiff to recover the full value of the horse under the laws of the state of West Virginia, and the terms of the contract. *Answer:* This point is refused. [8]

5. Under the contract for the shipment of the horse as shown by the evidence of this case, which must be construed according to the law of West Virginia, the state in which the injury complained of happened, if the plaintiff should be given a verdict it must in any event be limited to the amount designated in said contract with interest. *Answer:* This point is affirmed, as stated in the general charge. [9]

Verdict and judgment for plaintiff for $443.60. Plaintiff appealed.

*Errors assigned* were (1–9), above instructions, quoting them.

*John H. Jordan,* with him *H. H. Waite,* for appellant.—In West Virginia the carrier cannot limit its liability for injury occasioned by negligence that was either gross, wanton or willful: Maslin v. R. R. Co., 14 W. Va. 180; Brown v. Adams Express Co., 15 W. Va. 812.

In order to bring this case under the rulings of Zouch v. Railway Company, 36 W. Va. 524 (15 S. E. Repr. 185), it was incumbent on the defendant to show by competent evidence, as has been repeatedly ruled by the courts in West Virginia, first, that a contract for the purpose of reducing the valuation of the horse had been fairly entered into and signed by the shipper; second, that a consideration was specially entered into and agreed upon in order to support that special agreement; and third, that the injury was not inflicted through the gross, wanton or willful negligence of the defendant company. A common carrier is liable for all losses that he could have

prevented by skill and foresight, and the onus is on him to show that the loss was such as he could not have prevented: Baltimore & Ohio R. R. Co. v. Morehead, 5 W. Va. 293; Brown v. Adams Express Co., 15 W. Va. 812; Searle v. Ry. Co., 32 W. Va. 370 (9 S. E. Repr. 248); Carrico v. W. Va. Cent., etc., Ry. Co., 39 W. Va. 86 (19 S. E. Repr. 571).

Gross negligence is simply want of that care which every man of common sense, under the circumstances, takes of his own property: Lancaster County Nat. Bank v. Smith, 62 Pa. 47; First Nat. Bank of Allentown v. Rex, 89 Pa. 308.

*J. H. Longenecker* and *W. H. Koontz,* with them *S. R. Longenecker,* for appellee.—Common honesty requires that a shipper should not be permitted to have two values on his property,— one for shipping purposes and another seven and a half times as much for compensation when a loss occurs: Weiller v. Penna. R. R. Co., 134 Pa. 310; Hart v. Penna. R. R. Co., 112 U. S. 331 (5 Sup. Ct. Repr. 151); Alair v. R. R. Co., 53 Minn. 160 (54 N. W. Repr. 1072); Graves v. Lake Shore & Mich. Southern R. R. Co., 137 Mass. 33; Pacific Express Co. v. Foley, 46 Kans. 457 (26 Pac. Repr. 665); Ballou v. Earle, 17 R. I. 441 (22 Atl. Repr. 1113).

Matters connected with the performance of a contract are governed by the law of the place of performance: Waverly Nat. Bank v. Hall et al. 150 Pa. 466; Brown v. Camden, etc., R. R. Co., 83 Pa. 316; Forepaugh v. Del. L. & W. R. R. Co., 128 Pa. 217; Fairchild v. P. W. & B. R. R. Co., 148 Pa. 527.

This case is ruled by Zouch v. Chesapeake & Ohio Ry. Co., 36 W. Va. 524 (15 S. E. Repr. 185). The horse was shipped under a special acceptance limiting the liability of the defendant, so that the strict rules of the common law did not apply; and it provided particularly against its liability for loss from floods and fire. By that contract the carriers of this horse became only bailees: Farnham v. Camden & Amboy R. R. Co., 55 Pa. 53, 55; Buck v. Penna. R. R. Co., 150 Pa. 170; Patterson v. Clyde, 67 Pa. 500; Steamship Co. v. Smart, 107 Pa. 492.

OPINION BY RICE, P. J., July 13, 1905:

This is the plaintiff's appeal from the same judgment from which the defendant's appeal was taken in which we herewith

file an opinion. Where a contract containing a stipulation limiting liability for negligence on the part of a common carrier is made in one state, but with a view to its performance, by transportation through or into one or more other states, it should be construed in accordance with the law of the state where its negligent breach causing injury occurs: Hughes v. Penna. R. R. Co., 202 Pa. 222. It is conceded that this rule is applicable to this case, and that in determining the principal question raised on this appeal the law of West Virginia is to control. In Zouch v. Chesapeake & Ohio Ry. Co., 36 West Va. 524, (15 S. E. Repr. 185) s. c. 17 L. R. A. 116, decided in 1892, the supreme court of appeals of West Virginia held as follows: " 1. A common carrier may, by special agreement, just and reasonable in itself, and fairly made between itself and the consignor of a horse at the time of the shipment, fix the value of such horse, upon consideration that the rate of charges for transportation shall be commensurate with the value of the horse thus ascertained, and may also limit its liability in cases of loss to the amount thus agreed upon, even though the loss may be the result of negligence on the part of the carrier, provided said negligence be not gross, wanton, or willful, but cannot wholly exempt itself from liability for loss resulting from negligence. 2. A common carrier is entitled to be fairly informed as to the value of the property confided to his care; and where a shipper enters into an agreement with a carrier as to the value of the property shipped, and receives the benefit of a low rate by reason of placing a low valuation upon the property, he is estopped from claiming or recovering another and higher valuation after the loss occurs, although said loss may be the result of negligence on the part of the carrier, provided the same is not gross, wanton, or willful." A careful examination of the later case of Berry v. W. Va. & Pittsburg R. R. Co., 44 W. Va. 538, (30 S. E. Repr. 143) cited by the plaintiffs' counsel, and the very recent case of Bosley v. Baltimore & Ohio R. R. Co.; 54 W. Va. 563; (46 S. E. Repr. 613.) s. c. 66 L. R. A. 871, decided in 1904, has failed to convince us that the decision in the Zouch case has either been overruled or has been so far modified as to detract from its authority as an exposition of the law of West Virginia applicable to the facts set forth in the syllabus above quoted.

214 TREXLER, Appellant, v. B. & O. R. R. CO. (NO. 2).

It is argued that even under the law as stated in that case the instruction that the plaintiffs could not recover more than $400, the valuation placed on the stallion in the shipping order, the bill of lading, and the live stock contract, was erroneous, because there was evidence from which the jury could have found that the loss resulted from the gross negligence of the defendant. The law of West Virginia, as we have seen, recognizes a distinction between negligence and gross negligence, and places the latter in the same category as wanton and willful negligence. Judged by its associated words as it ought to be, the term implies something more than the omission to exercise extraordinary care. It doubtless implies the omission of that care which even the most inattentive and thoughtless men take of their own concerns : Tompkins v. Saltmarsh, 14 S. & R. 275 ; First National Bank of Carlisle v. Graham, 79 Pa. 106, 116 ; First National Bank of Allentown v. Rex, 89 Pa. 308 ; 1 Bouv. Law Dict., Rawle's ed. 904. We have held in disposing of the defendant's appeal from this judgment that there was sufficient circumstantial evidence of the defendant's negligence—that is, of the omission to exercise that high degree of care which it is the duty of common carriers to exercise—to warrant the submission of the question to the jury. But we agree with the learned judge below, that it was wholly insufficient to warrant an inference of the element of willfulness or wantonness, or of that reckless disregard of a manifest duty and of the consequences thereof as affecting the property committed to the defendant's care which is implied in the term gross negligence.

The difficult question in the case is as to whether there was such a special agreement upon consideration as is referred to in the Zouch case. The plaintiffs were dealers in live stock and frequently shipped horses at the Marklesburg .station of the Huntingdon & Broad Top Railroad Company to different parts of the country. The evidence shows that it was customary for the agent of the company in filling out the shipping papers to fix the value of a horse at $400 and that it was a rule of the company that a higher valuation could not be placed on the horse without obtaining special leave from the general manager of the road. It is to be observed, however, that the existence of this rule was not brought to the notice of the

plaintiffs' agent; that he made no inquiry regarding it and that he made no request that a higher valuation be placed on the horse. When he brought the horse to the station he told the company's agent to bill him as he had done in previous shipments. Accordingly, in making out the shipping papers, to which we shall refer hereafter, the company's agent fixed the value at $400. The plaintiff's agent made no objection to this; nor did he tell the company's agent that the value of the stallion was $3,000, as is now claimed; nor did he state what his value was; nor is there any evidence that the company's agent knew what it was or that it was greater than the sum named in the papers. It is admitted that in reply to the inquiry of the plaintiffs' agent the company's agent said that the freight charges would be collected at the other end and that he did not know how much they would be. Thus far the testimony of these two witnesses is in substantial harmony. But the plaintiffs' agent testified that he " directed the horse to be billed as first class freight " and told the company's agent " to make out the shipping bill at first class rates" and supposed he had done so. The version of the company's agent of what the plaintiff's agent said was that he " wanted the horse to go first class." If the fact that there was a special agreement whereby the value of the horse was fixed at $400, upon consideration of a reduced freight rate, depended upon the oral testimony, it is quite clear that it could not be found. We think it equally clear that if there was a written contract to that effect the oral testimony was insufficient to warrant the court in setting it aside or reforming it upon the ground of fraud, accident or mistake. For a discussion of the applicability of the general rule upon that subject to bills of lading we refer to Keller v. Baltimore & Ohio R. R. Co., 10 Pa. Superior Ct. 240; affirmed by the Supreme Court in 196 Pa. 57. Three papers were executed at the time of the shipment, all of which form part of the contract and must be considered in determining what it was. They are: first the shipping order which was attached to the duplicate copy of the bill of lading retained by the company's agent and was signed by the plaintiffs' agent; second, the live stock contract which also was signed by the plaintiffs' agent; third, the bill of lading designated as the uniform bill of lading. In the bill of lading as well as in the shipping order the property,

its value and weight were thus stated: "One horse, value restricted to $400, subject to live stock contract. Weight subject to correction 4,000." In the live stock contract the value of the horse was stated to be $400 and one of the conditions therein to which the plaintiffs agreed was: "First:—To pay freight thereon to said company at the rate of        per pounds, (company's weight), and all back freight and charges paid by them, hereby assuming all risks of damage and injury to, delay, depreciation, and escape of said stock while in transit, and releasing the said company and other carriers from all claims or demands therefor, except when proved to have occurred through gross negligence." The bill of lading declared that the property was received "subject to classification in effect" on the date of shipment; it also contains this clause: "It is mutually agreed, in consideration of the rate of freight hereinafter named, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns as just and reasonable." On the back of the paper under the head "Uniform Bill of Lading Conditions" appears, inter alia, the following stipulation to which the plaintiffs must be deemed to have agreed: "The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation." There is also the following clause: "10. Owner or consignee shall pay freight at the rate herein stated, and all other charges accruing on said property, before delivery, and according to weights as ascertained by any carrier hereunder." We come now to the shipping order. At its head is a notice evidently intended for the shipper's information and guidance, that he may elect to accept the conditions printed on the back of the paper and contained in the bill of lading of which the shipping order is a part, or may require the

carriage of the property at "Carrier's Risk." Then follows the order proper which reads : " Receiver, carry and deliver the articles described below, in accordance with the classification in effect at the date of this order and subject to the conditions of the bill of lading of which this shipping order is a part. (For carrier's liability see note below.) " There being no allegation that the contents of the note thus referred to were misrepresented by the company's agent, or that the plaintiffs' agent was induced by the latter not to read it or that he was not given full opportunity to read it, the note must be deemed a part of the shipper's order notwithstanding the fact that it appears below his signature and that it was not specially called to his attention by the company's agent. As it has a very important bearing upon the question under discussion it seems appropriate to quote it at length. It reads as follows : " Note :— Unless otherwise provided in the classification, property will be carried at the tariff rates, if shipped subject to the conditions of the uniform bill of lading. If the shipper elects not to accept the said tariff rates and conditions, he should so notify the agent of the receiving carrier at the time his property is offered for shipment, and if he does not give such notice it will be understood that he desires his property carried subject to the uniform bill of lading conditions in order to secure the reduced class rates thereon. Property carried not subject to the conditions of the uniform bill of lading will be at the carrier's liability, limited only as provided by common law and by the laws of the United States and of the several states, in so far as they apply. Property thus carried will be charged twenty per cent higher (subject to a minimum increase of one per cent per one hundred pounds) than if shipped subject to the conditions of the uniform bill of lading, and the costs of marine insurance will be added over any part of the route that may be by water."

Beginning with the shipping order and tracing the transaction to the completion of the contract it appears, first, that the plaintiffs' agent had notice that he had an election to ship the property subject to the conditions of the uniform bill of lading, in which case it would be carried at tariff rates, or to ship it at " carrier's liability," in which case the freight charges would be twenty per cent higher, subject to a minimum increase of one per cent per 100 pounds ; second, that having this elec-

tion he ordered the property to be shipped and the carrier undertook to transport it subject to the conditions of the uniform bill of lading, one of which was that in case of loss the liability of the carrier should be restricted to the value agreed upon even though it might be less than the actual value. This was the contract. If the stallion had been carried safely to his destination and the carrier had demanded the compensation that would have been demandable if the value agreed upon had been $3,000 instead of $400, and the stallion had not been shipped subject to the last mentioned and the other conditions of the uniform bill of lading, it is very clear that the plaintiffs could have successfully defended against the claim. But if the defendant was bound by the agreement whereby the plaintiffs got the benefit of the lower freight charges, so also were the plaintiffs estopped by the same agreement from claiming or recovering a higher valuation after the loss occurred. The controlling facts of the case bring it within the rule enunciated in Zouch v. Chesapeake & Ohio Ry. Co., 36 W. Va. 524, (15 S. E. Repr. 185), and therefore the learned judge was right in instructing the jury that the plaintiff could recover no more than $400, with interest from the date of the loss. The result might have been different if the loss had occurred in Pennsylvania. See Hughes v. Penna. R. R. Co., 202 Pa. 222.

We see no error in the refusal to affirm plaintiffs' second point, which is quoted in the second assignment of error, and it does not seem to us that this requires a particular discussion.

The only other question that we deem it necessary to discuss is as to the burden of proof. We had occasion to consider the question in a case where there was a special contract limiting the liability of the carrier excepting where the loss or injury resulted from his own or his servant's negligence in Needy v. Western Maryland R. R. Co., 22 Pa. Superior Ct. 489. We there said : "It has been held that where, in case of such contract, the carrier accounts for the loss or injury in a way not to implicate himself in a charge of negligence, this is a sufficient defense, unless the plaintiff prove negligence. Hence the burden of proof was on the plaintiff where the goods were transported by the carrier to the place of destination, put into its shed on its wharf where it had four watchmen, and before the plaintiff had notice of their arrival or opportunity to re-

move them, a fire from an unknown cause took place in its boat lying at the wharf (the boat being fully manned), which consumed the goods in the shed: Farnham v. Camden & Amboy R. R. Co., 55 Pa. 53. So, in an action 'to recover for the loss of a horse shipped under a limited liability contract, where there was no proof of negligence and the sole basis for a presumption of negligence was the fact that the horse was found dead in the car upon its arrival at the point of destination, it was held that the plaintiff could not recover: Penna. R. R. Co. v. Raiordon, 119 Pa. 577." See also Davenport v. Penna. R. R. Co., 10 Pa. Superior Ct. 47 ; Patterson v. Clyde, 67 Pa. 500 ; Buck v. Penna. R. R. Co., 150 Pa. 170, 177 ; Frank v. Central R. R. Co. of N. J., 9 Pa. Superior Ct. 129. The case is distinguishable from Powell v. Penna. R. R. Co., 32 Pa. 414, and Trace v. Penna. R. R. Co., 26 Pa. Superior Ct. 466, in that the contract under consideration here contemplated that the plaintiffs' employee should be in charge of the stallion and the car in which he was transported to the extent, at least, of having control of the disposition of the straw and hay in the car, and in the further fact that by reason of his being in the car he would be more likely than any one else to know how the fire in the straw originated. The question is not altogether free from difficulty, but we are inclined to the opinion that the foregoing statement of the law would have been applicable to the present case and therefore there would have been no legal presumption of the defendant's negligence if no evidence, direct or circumstantial, had been given as to the origin of the fire which Hess discovered in the straw in the car of which he had charge. In view of the fact that such evidence was furnished and that the jury accepted it it seems unnecessary to discuss the question further.

All of the plaintiffs' assignments of error are overruled and their appeal is dismissed, but for the reasons given in disposing of the defendant's appeal the judgment must be reversed and a new venire awarded.