## Ridge *v.* Erie Railroad Company, Appellant.

*Carriers—Common carriers—Live stock—Bill of lading—Negligence—Presumption—Limitation of liability—Interstate commerce.*

1. Where a horse is shipped under a special bill of lading whereby in consideration of a reduced rate of freight the railroad company is relieved from liability from loss or injury occasioned by "burning of hay or straw, or other material used for feeding or bedding or by fire from any cause whatever," and the horse is killed as the result of a fire catching in the hay and straw in the car in which the horse was shipped, no presumption of negligence arises against the railroad company from the mere fact of the occurrence of the fire, but the shipper in an action for the loss of the horse is bound affirmatively to prove negligence on the part of the company.

2. A provision in an interstate bill of lading fixing the amount of the liability of a carrier to the valuation stated in the bill of lading, is now binding upon Pennsylvania courts.

Argued April 16, 1913. Appeal, No. 48, April T., 1913, by defendant, from judgment of C. P. No. 4, Allegheny Co., Third Term, 1909, No. 428, on verdict for plaintiffs in case of Patrick Ridge and Michael Ridge, partners doing business as Ridge Brothers, v. Erie Railroad Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Reversed.

Trespass for the loss of a horse and buggy.   Before Brown, J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following points:

2. That under the contract under which the horse was carried, to entitle the plaintiffs to recover for the loss of the horse they must show that the fire which burned the horse was caused by the negligence of the defendant.   The plaintiffs have failed to show the fire was caused by the negligence of the defendant and the verdict must be for the defendant as to the horse. *Answer:* Refused. [1]

3. That under the contract under which the horse was shipped, to entitle the plaintiffs to recover for the loss of the horse the burden is upon them to show that the fire was caused by the negligence of the defendant. The plaintiffs have failed to meet that burden, and the verdict must be for the defendant as to the loss of the horse. *Answer:* Refused.

4. That under the law and all the evidence the verdict must be for the defendant as to the horse. *Answer:* Refused. [2]

Verdict and judgment for plaintiffs for $1,084.16.   Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*George F. Davenport,* with him *Eugene Mackey,* for appellant.—The court below adopted the ruling of this court in Trace v. R. R. Co., 26 Pa. Superior Ct. 466, and charged the jury that the loss of the horse by the burning of the car raised a presumption of negligence by the defendant, notwithstanding the special contract of limited liability under which the shipment was made. We must admit at the threshold of this argument that the Trace case seems to sustain this action of the court,

and must further admit that we can scarcely hope for success on this appeal unless we can procure a reversal or modification of the ruling in that case. In that case, though the report does not show it, appellant's paper-book shows that the horses were shipped under a uniform live stock contract precisely similar to the one in this case, and in an ordinary closed box car, with straw for bedding, and that the horses were killed by the burning of the straw and the car, also as in this case. After a careful examination of the Trace case we are satisfied that its decision is not in harmony with many decisions of both the Supreme Court and this court on the question of the burden of proof in case of loss of goods shipped under limited liability contracts, and the presumption from the mere happening of the accident. We think the cases of Farnham v. R. R. Co., 55 Pa. 53; Colton v. R. R. Co., 67 Pa. 211; Patterson v. Clyde, 67 Pa. 500; Buck v. R. R. Co., 150 Pa. 170; Crary v. R. R. Co., 203 Pa. 525; Needy v. R. R. Co., 22 Pa. Superior Ct. 489; Trexler v. R. R. Co., 28 Pa. Superior Ct. 207, and many others, enunciate principles at variance with the decision in the Trace case.

*John A. Metz*, for appellees.

OPINION BY PORTER, J., October 13, 1913:

The plaintiffs shipped, at Seeley Creek, in the state of New York, over the lines of defendant company and connecting carriers, to Vanderbilt, Pennsylvania, a horse, buggy and grading outfit. The buggy and grading outfit were placed in one end of a box car and the horse, which was in charge of an agent of the plaintiffs, in the other end of the same car. The car containing the property reached Meadville, Pennsylvania, in good condition, and was there placed on a side track to await for a few hours the making up of a train, for delivery to a connecting carrier, to be carried to its destination. The agent of the plaintiffs, who was to take care of the

horse during the transportation, left the car standing in the freight yard, and, a few minutes after his departure, the hay and straw in the car which were to be used for feeding and bedding the horse were discovered to be on fire, and before the fire could be extinguished the horse had been killed and the buggy and grading outfit rendered practically worthless. The plaintiffs brought this action to recover the value of the horse and other property thus destroyed. The plaintiffs produced evidence at the trial to the effect that the buggy and grading outfit were worth $396 and the horse $500, and there was no dispute under the evidence that these were the actual values of the property. The plaintiffs recovered a verdict and judgment in the court below, upon the basis of these valuations, and the defendant appeals.

The buggy and grading outfit were shipped under an ordinary bill of lading, which did not limit the liability of the carrier, and it was conceded in the court below, as well as here, that the plaintiffs were entitled to recover the value of that property. The horse was shipped under a special bill of lading, or uniform live stock contract, in which the plaintiffs expressly acknowledged that they had the option of shipping the horse "at a higher rate of freight according to the official tariffs, classifications and rules of said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies as common carriers of the said live stock, upon their respective roads and lines, but they voluntarily decided to ship same under this contract at the reduced rate of freight above mentioned." This bill of lading contained the following covenants: "That the carrier assumes liability on the said live stock to the extent only of the following agreed valuation, upon which valuation is based the rate charged for the transportation of the said animal, and beyond which valuation neither the said carrier nor any connecting

carrier shall be liable in any event whether the loss or damage occur through the negligence of the said carrier or connecting carriers, or their employees, or otherwise. If horses or mules . . . . not exceeding $100 each. . . . That said shipper is at his own sole risk and expense to load and take care of, to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same; and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same." "That the said shipper is to inspect the body of the car or cars in which said stock is to be transported and satisfy himself that they are sufficient and safe, and in proper order and condition, and said carrier or any connecting carrier shall not be liable on account of any loss of, or injury to said stock, happening by reason of any alleged insufficiency in, or defective condition of the body of said car or cars." "That said shipper shall see that all doors and openings in said car or cars are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or any connecting carrier shall not be liable on account of the escape of any of the said stock from said car or cars." "The said carrier or any connecting carrier shall not be liable for or on account of any injury sustained by said live stock, occasioned by any or either of the following causes to wit, overloading, . . . . fright, burning of hay or straw, or other material used for feeding or bedding or by fire from any cause whatever."

This was an agreement between the plaintiffs and the railroad company that the common-law rule, making the common carrier an insurer of the safety of the horse, should be set aside, and that the plaintiffs would be bound by the agreement between them as the law defining the duty and liability of the carrier in transporting the horse from Seeley Creek, in the state of New York, to Vanderbilt, in the state of Pennsylvania. That

such an agreement may be made has long since been settled: Farnham v. Camden & Amboy Railroad Co., 55 Pa. 53. But it is equally well settled that, by such an agreement, a common carrier cannot relieve itself from liability for its negligence, this upon grounds of public policy. The effect which the law gives to a contract of this character is to limit the liability of the carrier, so that it shall be required to answer only for the consequences of its negligence. These principles were recognized at the trial by the court below and the only questions raised by the first five specifications of error relate to the ruling of the court as to the burden of proof. The learned judge of the court below held that the occurrence of the fire in the car which killed the horse, was to be classed with such accidents as the breaking of a car or a collision between trains, and gave rise to a presumption of negligence, casting upon the defendant company the burden of showing, to the satisfaction of the jury, that the fire resulted from causes beyond its control and without fault or negligence on its part. The court was of opinion that the question was ruled by Trace v. Pennsylvania Railroad Co., 26 Pa. Superior Ct. 466. There are in the opinion in that case some remarks so general and sweeping that they seem to justify the view of the question taken by the court below. The report of that case fails to disclose the character of the bill of lading under which the shipment was made; that bill of lading and the evidence in the case may have presented only the same questions which were considered in Powell v. Pennsylvania Railroad Co., 32 Pa. 414. When a case is to be considered as a precedent the facts recited in the opinion of the court must be accepted as the facts in that case in determining what was by the case decided. The report of the case does not disclose that the shipping contract there involved was of the character of that with which we are now dealing, as was pointed out by President Judge RICE in Trexler v. B. & O. R. R. Co. (No. 2),

28 Superior Ct. 207. If the bill of lading involved in Trace v. Pennsylvania R. R. Co. was the same as that here presented, then it is our duty cheerfully to concede, that the decision in that case is not in harmony with the decisions of the Supreme Court, nor with earlier and later decisions of this court. The bill of lading in the present case relieved the carrier from liability for loss by fire. The question presented is, therefore, whether in addition to the proof of a loss by fire, when the car was standing in the freight yard at Meadville, unattended by circumstances indicating negligence, the defendant was bound to prove such care and diligence at and before the time of the fire, as will preclude a presumption of negligence; or in other words, whether it must negative negligence by affirmative evidence of diligence. This point is ruled by the cases of Farnham v. Camden & Amboy Railroad Co., 55 Pa. 53, and Colton v. Cleveland & Pittsburg Railroad Co., 67 Pa. 211. "The principle of these cases is, that the burden of proof of the loss which brings the carrier within the restriction in his contract lies on him; but when he has proved such loss, unattended by circumstances indicating negligence, the onus of the proof of negligence is cast upon the plaintiff. The effect is, that the carrier must begin the proof, and if he cannot make it without showing negligence, or circumstances from which it will be inferred, he is not exonerated. But when he has shown a loss within the restriction, to require more of him is to limit the restriction and destroy its chief purpose. It is the great risk of fire, not compensated by the ordinary compensation for carriage, and the difficulty of preventing it even with great care, as well as the impossibility oftentimes of proving the attending circumstances, which constitute the great reason for the limitation of liability from this cause:" Patterson v. Clyde, 67 Pa. 500. These cases establish that negligence is not to be presumed from the mere occurrence of a fire, when the shipment is under a contract such as that with which we

are now dealing. Liability of a common carrier being, by such an agreement, confined to its negligence, there is no reason why the ordinary rule, that negligence is not to be presumed, but must be proved, should not apply: Buck v. Pennsylvania R. R. Co., 150 Pa. 170; Scott & Co. v. Railway Co., 172 Pa. 646; Crary v. Lehigh Valley Railroad Co., 203 Pa. 525; Needy v. Railroad Co., 22 Pa. Superior Ct. 489; Trexler v. B. & O. R. R. Co. (No. 2), 28 Pa. Superior Ct. 207. The first, third, fourth and fifth specifications of error are sustained.

The same question is presented by the seventh specification of error, but this specification incidentally raises the question of the measure of damages for the loss of the horse. The plaintiffs claimed at the trial, and produced evidence tending to establish the fact, that the horse was worth $500, the defendant did not seriously attempt to deny that such was the actual value of the horse. The court charged the jury that, if they found the defendant negligent, the plaintiffs were entitled to recover the amount of their claim, which the jury must have understood as being $500 for the horse. But the plaintiffs had, in the bill of lading, covenanted that the value of the horse was $100. This was an interstate shipment and at the time this case was tried the courts of Pennsylvania had undoubtedly held that, even in an interstate shipment, a covenant in a bill of lading fixing a limit to the valuation for which a shipper could recover for the negligence of a carrier was invalid. The learned judge of the court below very properly, therefore, followed the decisions of the Supreme Court of this state and held that if the defendant had been negligent the plaintiffs were entitled to recover the full value of the horse notwithstanding the limitation fixed by the bill of lading, the loss having occurred in Pennsylvania. Since the trial in the court below the supreme court of the United States, in Adams Express Co. v. Croninger, 226 U. S. 491, has decided that when

a shipment involves interstate commerce, a stipulation in a bill of lading limiting the value of the property shipped, the shipping charges being based on that value, is binding between the parties, and in case of loss the shipper cannot recover of the carrier a greater amount. The decision of the supreme court of the United States on that question should be followed by the courts of this state, Dodge v. Adams Express Co., 54 Pa. Superior Ct. 422, in which an opinion was filed by this court in July last. The result of this is that the plaintiffs cannot in this case recover for the loss of the horse an amount in excess of that indicated by the bill of lading.

The judgment is reversed with a venire facias de novo.