Straub v. Mogul et al.

*G. J. Cunniff* and *H. D. O'Connor*, for plaintiff.

*J. W. Henderson*, for defendant.

*H. B. Ripkee*, for additional defendant.

ALESSANDRONI, J., April 15, 1946.—This is an action in trespass for personal injuries sustained by Harriet B. Straub, while descending in an elevator in a building owned by defendant, Lena Mogul, at 728-30 Arch Street, Philadelphia. At the trial a nonsuit was entered in favor of the co-defendant, Joseph Mogul, and additional defendants, a co-partnership trading as the Paris Elevator Company, to which no exceptions were taken.

The undisputed evidence established that plaintiff was a business guest using the elevator to leave her place of employment on the fourth floor of the building at about 5 p.m. on March 22, 1945. While the car was descending between the third and second floors, the elevator mechanism broke and the car fell down the shaft until it struck the bumpers in the basement of the building. As a result of this fall plaintiff sustained the injuries for which she seeks to recover damages.

In the leading case of Fox v. Philadelphia, 208 Pa. 127, the court, quoting from Laing v. Colder, 8 Pa. 479, stated at page 134:

". . .'the slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages. Nay, the mere happening of an injurious accident, raises prima facie a presumption of neglect, and throws upon the carrier the onus of showing it did not exist.' This presumption may, of course, be rebutted by the carrier by showing that the injury

arose from an accident which the utmost skill, foresight and diligence could not have prevented: Meier v. Penna. R. R. Co., 64 Pa. 225."

and further stated at page 135:

"The person running such elevator must be held to undertake to raise such persons safely, as far as human care and foresight will go. The law holds him to the utmost care and diligence of very cautious persons, and responsible for the slightest neglect. Such responsibility attaches to all persons engaged in employments where human beings submit their bodies to their control by which their lives or limbs are put at hazard, or where such employment is attended with danger to life or limb. The utmost care and diligence must be used by persons engaged in such employments to avoid injury to those they carry. The care and diligence required is proportioned to the danger to the persons carried. In proportion to the degree of danger to others must be the care and diligence to be exercised; where the danger is great, the utmost care and diligence must be employed. In such cases the law requires extraordinary care and diligence. We know of no employment where the law should demand a higher degree of care and diligence than in the case of the persons using and running elevators for lifting human beings from one level to another."

This ruling was reaffirmed in the case of McKnight v. S. S. Kresge Co., 285 Pa. 489, where it was held that the owner of a passenger elevator is held to the highest degree of care in the construction, maintenance and operation of the elevator, and although he is not an insurer of the passengers' safety, he is responsible for the utmost protection which human knowledge, skill and foresight can provide. Since the instrument which causes the injury is under the sole management and control of the owner or his repre-

sentative, and is an agency wherein the slightest negligence will be followed by injuries of grave consequences, the happening of an accident that in the ordinary course would not happen had those in control used proper care or which human knowledge, skill and foresight could have guarded against, affords reasonable evidence, in the absence of an explanation, that the accident happened as a result of want of care: McKnight v. S. S. Kresge Co., supra, at page 494. It follows, therefore, that an elevator owner must keep pace with science, art and modern improvements in appliances, and that it is his duty to provide and make use of the best and most approved machinery: Strobel v. Park, 292 Pa. 200, 205. In the case of Petrie v. Kaufmann & Baer Co., 291 Pa. 211, the court held defendant liable for injuries sustained by a passenger of an escalator, where that means of conveyance stopped momentarily and then started with a sudden and violent jerk. The liability was held to be a question for the jury, even though defendant's inspector testified that he made hourly inspections.

In examining the evidence offered by defendant in the light of the responsibility imposed upon her by the decided cases, we find that this elevator was more than 20 years old. On the morning of the day of the accident, it had stopped. The elevator service company, which had the maintenance contract, examined the elevator car and found one of the contact fingers in the car controls was worn and required adjustment. Defendant called various witnesses to prove that this car was inspected regularly, and that the last one of these regular inspections was made on February 17, 1945. They described in detail the character of their inspection which was visual and auditory in nature. The various sections of the mechanism were examined in place, and the car was run up and down the shaft a few times to listen for any unusual noises.

It is undisputed that the cause of the accident was a break in the sheave or driving shaft, which was located in the penthouse at the top of the elevator well. This shaft held the grooved sheave over which the cable was suspended. At one end of the cable, the elevator car was attached, and at the other end, the usual counterweight. On each side of the sheave two inches of the shaft were visible and the balance concealed in the outboard bearings. There was a clean break in this shaft at a point between the sheave and the outboard bearing. One witness also testified that the outboard bearing that supported the shaft had also broken.

The witnesses described this clean break in the shaft as a result of a process known as crystallization, which was defined as a separation of the molecules, which weakened the steel and caused it to become brittle. There was also evidence that crystallization is not discernible by a visual inspection of the exterior surface of a steel shaft. In the absence of any testimony in rebuttal thereto, we must be bound by it.

Various explanations were offered as the cause of the crystallization. One witness said that it was the result of a misalignment of parts, or improper design, or heat due to friction, which might be the result of a lack of proper lubrication. Defendant's testimony also established that crystallization might be the result of a continuous jarring which occurs each time the elevator comes to a stop and concomitant action of the cable and the force of its counterweight results. This witness, who serviced this elevator, also testified that in his experience he had seen a clean break of a shaft as the result of crystallization 100 times.

Defendant therefore established how the accident occurred and contends that the explanation offered absolves her of liability. We cannot agree with this. Here we have an elevator which all evidence shows to

be more than 20 years of age. It is undisputed that a break in the shaft caused by crystallization could not be observed visually, and further that only two inches of the defective shaft on each side of the sheave could be seen by an examination of the mechanism in place. We have an admission that the expert mechanic who had charge of servicing this elevator had seen shafts break at least 100 times as the result of the continuous jarring which was an incident to elevator operation. Under all the evidence and under the strict duty and responsibility imposed upon defendant, we believe that the jury could reasonably conclude that inspection should go beyond visual and auditory test and keep "pace with science, art and modern improvements." When the elevator was inspected in its broken condition, it was admitted that one of the bearings through which this shaft passed and which was to have a tolerance of 3/1000ths of an inch had been worn to such a degree that the tolerance was 1/65th of an inch. Although this was not the cause of this accident, it was evidence that the type of inspection upon which defendant confidently rested did not disclose the true condition of this decrepit machinery. Morever, the worn contact fingers should have put defendant upon notice that the age of this elevator was such that a most cautious inspection was required. We believe that under all the evidence this was properly a matter for the jury, and that as a result of their verdict in favor of plaintiff they found that there was "the slightest neglect" for which defendant is responsible.

Defendant also contends that the verdict in the sum of $10,000 is excessive and is the result of bias and prejudice. At the time of this accident plaintiff was a woman of sound health, 68 years of age and gainfully employed as a sewing machine operator, in which employment she received the net sum of approximately $30 per week. Her life expectancy was 10

years. As a result of this accident, she suffered fractures of the lower portion of the fibula and the lowermost portion of the tibia. She remained in the hospital for a period of 10 days and was confined to her bed at home for a period of nine weeks, after which she remained in her room or the sun porch of her home for an additional period of six weeks. Thereafter she could walk only with the aid of a crutch and cane. According to the undisputed testimony of her physician who was a qualified bone surgeon, her injuries are permanent and she will be crippled for the balance of her life and unable to perform work by which she gained her livelihood. At the time of the trial she was required to use a cane and wear a leather brace on her ankle which was still badly swollen and tender. Further medical and surgical care will be required and possibly the use of a steel brace. Throughout this time and permanently in the future she has and will sustain severe pain. At the time of the trial her monetary loss was approximately $2,000. We do not feel that the facts demonstrate the verdict to be so plainly excessive that the jury abused its power: Goldman et al. v. Mitchell-Fletcher Co. et al., 285 Pa. 116; nor do we feel that it is the result of passion or mistake or in an amount that is shocking. This woman is permanently crippled, will live in constant pain and will not only be deprived of her earnings but also of her freedom of locomotion. The question of damages was submitted to the jury in a careful, complete and accurate charge. Under the facts, we do not feel obliged to disturb their findings.

### Order

And now, to wit, April 15, 1946, defendant's motions for judgment n. o. v. and new trial are dismissed, and judgment is directed to be entered on the verdict.